**THE FOX LAW CORPORATION**
Steven R. Fox, Calif. State Bar No. 138808
17835 Ventura Blvd., Suite 306
Encino, CA 91316
(818) 774-3545; FAX (818) 774-3707
srfox@foxlaw.com

**THE LAW OFFICES OF KEITH Y. BOYD**
Keith Y. Boyd, OSB #760701
724 S. Central Ave., Suite 106,
Medford, OR 97501
(541) 973-2422; FAX: (541) 973-2426
Email: keith@boydlegal.net

Proposed Attorneys for Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | **CASE NO.: 17-33893-tmb11** |
| | **S C H E D U L I N G A N D C A S E MANAGEMENT CONFERENCE REPORT** |
| Creekside Homes, Inc., | |
| Debtor. | Date: November 20, 2017 |
| | Time: 2:00 p.m. |
| | Place: Courtroom 4 |

In response to the Court's "ORDER SETTING SCHEDULING AND CASE MANAGEMENT CONFERENCE AND NOTICE OF POSSIBLE DISMISSAL", the Debtor offers this Report. It is supported by the Declaration of Andrew Burton ("Declaration") and the attached exhibits.

I.    <u>Post-Petition Matters - Legal</u>

The Debtor filed two first day motions addressing cash collateral and payroll. The Court has entered both orders.

The Debtor attended the Informal Debtor Interview (IDI) meeting with the U.S.

Trustee. The Debtor requested and was granted an extension of time to file its Statement of Financial Affairs. The Debtor has filed its Statement on November 9th (docket no. 45) The Debtor will file its October Monthly Operating Report on or before November 15th.

The Debtor has filed all post-petition tax returns due to be filed post-petition. Four entities potentially hold interests in the Debtor's monies or receivables:

- Funding Circle loaned $100,000 at 19.29% interest on or about October 26, 2016.

- Swift loaned $100,000 at 17% on or about March 7, 2017.

- Knight Capital loaned $104,000 at 28% interest on or about March 8, 2017.

- LoanMe loaned $75,000 in August, 2017. The interest rate is 69%.

2.    Post-Petition Matters - Business and Financial

The Debtor will not reach the projection gross revenues post-petition for the following reasons:

1.    The presence of mechanics liens on 3 jobs where monies are owed has caused the construction lenders to decline to pay the Debtor. The lenders want the mechanic liens cleared from title. The Debtor does not have a clear path to doing so without authorizing payment of prepetition claims to the mechanic lien claimants. Also, there is effectively no profit for the Debtor (or even a serious amount of money for cash flow) if the Debtor could authorize such payments. It seems that the better strategy is to reject these four construction contracts and to incur the damage to reputation instead. The Debtor's personnel had believed that with the chapter 11 filing, the lenders would release the funds. The Debtor does

not expect to realize the gross revenue which it had initially projected.

2.      One on-going job without mechanics liens, the D.L. job, has a property owner refusing to sign off on the monthly draw request to the construction lender.  The property owner contended that the Debtor was seeking to draw more than what it was entitled to draw.  The Debtor made a point of agreeing to every one of the property owner's demands but the property owner is not interested in signing off on the draw request.  The Debtor believes that the property owner is acting in less than good faith and is seeking inappropriate advantages.  This property owner has retained an attorney and counsel have been communicating. The Debtor has stopped work on the D.L. job pending resolution.  This will cost the Debtor revenue of approximately $21,520 which the Debtor had forecast to be paid during the week ending November 17th.

As a result, there are some small post-petition payables which the Debtor expects to pay in the week prior to November 20th.

To reflect the changes in revenues the Debtor has experienced, over the past couple of days, the Debtor has prepared a revised projection of revenues, COGS, expenses, net and cash flow.   (**Exhibit "A"**) It is meant to supplant the projection attached to the previously filed Amended Motion for Use of Cash Collateral on a Final Basis.  The revision reflects lowered revenues.  Also, expenses in the week ending 11/10 were moved to the next week due to a lack of funds.

The Debtor has four lenders it has utilized when a construction loan was needed.  Two lenders are more expensive than the other two.  Post-petition the Debtor has had one of the lower cost construction lenders  inform the Debtor that it would not approve new construction loans for the Debtor during the chapter 11 case and

declined to fund one pending construction loan for a project ready to go. Conversely, the second lower cost lender has informed the Debtor that despite the chapter 11 filing, it will fund construction loans and will increase to ten (10) the number of construction loans it will fund at any one time where the Debtor is the general contractor. The Debtor is attempting to change the first lender's declination.

Some sub-contractors are continuing to do business with the Debtor on credit terms; others are not.

The Debtor has been informing property owners about the chapter 11 filing, including property owners whose properties are encumbered by mechanic liens.

On November 8th, an arbitration was held in New Jersey in an action Swift Financial brought against the Debtor and the two guarantors, Mr. and Mrs. Burton. The Debtor believes that the arbitration is completed other than an issue concerning the amount of damages and that the arbitrator may be issuing a judgment against the guarantors.

Knight Capital brought suit prepetition against the Debtor for breach of contract and against the Burtons on guaranties in Florida state court. The Debtor filed a notice of stay in that action.

One vendor has threatened to file a mechanic lien post-petition for monies owed prepetition. Under case law, that would violate the automatic stay. The same vendor has agreed to provide credit post-petition to the Debtor.

As a result of all of this, the Debtor's first few weeks in Chapter 11 have not been easy. Some jobs are stalled, at least for the moment. Other jobs are moving forward smoothly.

3.    Post-Petition Moving Forward

The Debtor anticipates business will return closer to normal. Property owners

Case 17-33893-tmb11    Doc 48    Filed 11/13/17

will get past unease from the filing. Sub-contractors, being paid post-petition for post-petition work, will be less uncomfortable too. With one of the two less expensive banks doing construction loans, the Debtor will be able to obtain construction loans for its newer clients.

Presently the Debtor has the various jobs including the following jobs under construction or to begin construction:

1.    A.N. This job is largely done but the amount of mechanics liens mean there is no profit in this job for the Debtor. It should be completed in December, 2017.

2.    J.H. This job too is largely completed with a small amount of money owed to the Debtor. The recorded liens equal or exceed the amount the Debtor is owed.

3.    S.C. This job has no monies owed and is over-encumbered with mechanics liens. This is the house which caught on fire and the property owner had no fire insurance at the time. The Debtor intends to move to reject this construction contract.

4.    K.G. This job has no mechanics liens. The contract amount is $422,128 and $146,100 has been paid so far. Completion is expected in February, 2018. The Debtor intends to complete the contract.

5.    T.S. This job has no mechanics liens. The contract amount is $539,238 and $50,000 has been paid thus far. The property does not have a construction loan. The project should be completed in May, 2018.

6.    D.L. This job is for $275,000 with $153,806 paid, as of October 31st. Provided the property owner signs off on the draw requests and does not

take steps to repudiate the construction contract, the job should be completed by December, 2017. There are no mechanics liens recorded against this property.

The Debtor has jobs with signed contracts including the following:

1.    K.K.  This is a $700,000 job with the contract signed.  The project is awaiting permits.  Construction should begin in January and conclude in November, 2018.  The lender is the lender which has stated it will work with the Debtor during the chapter 11 case.

2.    J.C.   This is a $650,000 job with the contract signed and with the lender which will work with the Debtor.   The property owner is uncomfortable with the chapter 11 filing and the Debtor is asking the owner to reconsider.  This job would begin in January and end in or about November, 2018.

3.    D.G.  This is a $380,000 contract with a signed contract.  The property owner is seeking a construction loan with the lender which will work with the Debtor in the chapter 11 case.  If the loan is approved, construction would begin in December, 2017, and conclude in or about July, 2018.

There are additional clients in the design contract phase whose contracts are not discussed above.

The Debtor is in the middle of considerable construction work and has several projects ready to start.

4.    Motions or Other Matter to Be Filed

The Debtor is contemplating the following motions in the near term:

A.    A motion to assume the D.L. job.  There are no mechanics liens against the D.L. property and the job should produce positive cash flow for the

Debtor.

B.     A motion to assume other construction projects which will produce positive cash flow.

C.     A motion to reject the four properties encumbered by mechanic liens. The Debtor is reluctant to bring this motion because of the reputational damage the Debtor would suffer. The Debtor's principal is considering obtaining monies to pay off some or all of these liens because of the importance of the Debtor's reputation going forward.

D.     A motion to assume the Debtor's office space. The space consists of approximately 900 to 1,000 square feet.

E.     When the Debtor's financial health improves, the Debtor will determine if it can enter into a stipulation with the Funding Circle, which appears to be the senior lender, to provide adequate protection.

F.     Disclosure Statement and Plan. It is premature to set any deadline to file either document. The Debtor needs to get past the early phase of the chapter 11 case. If it does, then the Debtor intends to reorganize and to pay its creditors a dividend over time.

G.     As operating funds become more available, the Debtor intends to seek authority to retain an accountant and to pay it a post-petition retainer.

H.     Adversary proceedings against both Knight Capital and Swift Financial to prevent either from executing on any judgment it may obtain against the Burtons and their assets. The Debtor believes it will be relying on the Burtons' financial assets to assist the Debtor to grow during the reorganization and to fund a plan of reorganization. The Burtons are in the process of borrowing monies to be used for the reorganization.

Case 17-33893-tmb11    Doc 48    Filed 11/13/17

5.   <u>Chapter 11A fast track case</u>

The Debtor does not believe that its case should be so designated.

6.   <u>Exhibits</u>

Attached are the following exhibits:

(A)   A cash flow analysis, prepared on a weekly basis through December, 2017 on a weekly basis and then monthly thereafter.  **Exhibit "A"**

(B)   Historical financial information for the past two (2) years.  **Exhibit "B"**

(C)   An actual to budget report for the post-petition period with a payables report, both through November 10, 2017.   **Exhibit "C"**

(D)   A budget of estimated professional fees during the chapter 11 case through May, 2018.  This budget is, at best, an estimate given the uncertainties of any chapter 11 case.  Here multiple attorneys have contacted counsel and have made requests which weigh on counsels' time.  Also, given that the overall nature of this case is not yet clear, and will not be until the Debtor works its way out of its present difficulties, the budget is uncertain.  **Exhibit "D"**

Dated: November 13, 2017          LAW OFFICES OF STEVEN R. FOX


    /s/ Steven R. Fox
Steven R. Fox, proposed counsel for Creekside
Homes, Inc., Debtor-in-Possession, California
SBN 138808


THE LAW OFFICES OF KEITH Y. BOYD


    /s/ Keith Y. Boyd
Keith Y. Boyd, proposed counsel for
Creekside Homes, Inc., Debtor-in-Possession,
OSB #760701

SCHEDULING AND CASE MANAGEMENT
CONFERENCE REPORT                                    Page 8 of  18

**DECLARATION OF ANDREW BURTON IN SUPPORT OF
CREEKSIDE HOMES, INC.'S SCHEDULING AND CASE MANAGEMENT
CONFERENCE REPORT**

I, Andrew Burton, declare as follows:

1.      I am the president and, with my wife Sarah Burton, I am the sole shareholder of Creekside Homes, Inc.  I am its founder.  My business address is 219 N.E. Highway 99 West, McMinnville, Oregon 97128.  My statements here are based on my personal knowledge and if called to testify concerning the contents of my declaration, I could and would do so competently.

## I.      AUTHENTICATION AND PERSONAL KNOWLEDGE.

2.      I am the Debtor's President.  I founded the Debtor in 2003 and later incorporated the company.

3.      My roles with the Debtor include the following:

- I oversee office administration.

- I overseeing the creation and maintenance of the Debtor's financial books and records.

- I oversee marketing and incoming calls for work.

- I oversee human resources.

- I oversee customer and public relations.

- I oversee marketing strategies and direction for the company.

- While I have an oversight role as to ongoing projects, they are directly overseen by employees Isaac Mitchell and James Elliott.

- I prepare the estimates for jobs (whether remodels or new homes) with help from Isaac Mitchell.

4.      I am one of the custodians of the Debtor's books, records, and documents.  The Debtor maintains records of its transactions in the regular course of

SCHEDULING AND CASE MANAGEMENT
CONFERENCE REPORT                                           Page 9 of  18

business, and it is the Debtor's practice and procedure to maintain records and to record transactions, acts, and events at or about the time the transaction occurs. The Debtor relies on these records in connection with its business dealings.

5. I oversee the safekeeping of business records including financial records. The Debtor has business records primarily as computer files. If a business record is maintained on a computer, there are safety features which help to keep business records secure. For example, access to many records is limited for most employees. Financial records as one example can only be accessed if one has the necessary password. Only management level personnel have a necessary password. Other employees do not.

6. The computer is linked to a server. The server backs up the data stored on the computer to the cloud. The server computer and attachments are maintained in a secured location and has an uninterruptible power supply.

7. I have personal knowledge of the procedures for creating, receiving, maintaining, storing and retrieving documents and records. The Debtor's business records are received, maintained, stored and retrieved in the ordinary course of the company's course of business. It is the ordinary course of the business to receive, maintain, store and retrieve records including any business records attached as exhibits discussed below. People with knowledge of the records and any exhibits contained below recorded or made these exhibits discussed below. The records were recorded at or near the time of their receipt or creation in the ordinary course of business.

8. In my declaration, I discuss various exhibits. As to each of them, I either prepared them, someone else prepared them but I inspected them or they were

obtained or prepared based on records which I oversee. They are true and correct copies of what they appear to be.

## II.    GENERAL BACKGROUND.

9.    The Debtor is an active Oregon corporation in good standing.

10.   When I was 19 years old, and prior to incorporating the Debtor, I started my own business performing carpentry, remodeling and new home building services. I incorporated the Debtor in 2009, and since then, the Debtor has operated a business constructing custom new homes, remodeling homes and acting as a project manager usually in and around McMinnville, Oregon. The Debtor typically employs 7 to 10 employees.

11.   In year 2003, when I was 22 years old, an investor backed me in the construction of a home on speculation. I built the spec home in part using my father's tools. When the property was ready to sell, the housing market collapsed and buyers disappeared. I held on to the spec home and I paid the mortgage for a few years until I could sell it, which I did for a profit. From building the first spec home, and through the Debtor, I moved quickly into construction of new homes and remodels.

12.   The Debtor has the necessary licenses.

13.   The Debtor presently builds most of its custom homes in and around Yamhill County though it has done considerable home construction work as far north as Portland, as far south as Salem and out to the coast. The Debtor may construct up to ten homes annually and will oversee existing construction work and do some remodeling work. Most of the work is done by subcontractors.

14.   The Debtor's typical customer reflects the Debtor's niche in the McMinnville market. They tend to be married couples who have done well in employment,

Case 17-33893-tmb11    Doc 48    Filed 11/13/17

often engineers from high tech companies looking to build a home near the wineries, who see the cost of purchasing a home to be roughly equivalent to the cost of building a home (to their specifications) and they are willing to put up with the time and the demands of construction.

15.    <u>The Peer Group</u>.   The Debtor is a member of the National Association of Homebuilders (both National and the Salem chapter) and belongs to a peer group of homebuilders.  Twice annually, the members of the peer group travel to the business location of one member and take a couple of days to inspect that member's business operation and its work in the field.  That member's books and records are opened up and scrutinized.  Our margins and costs are inspected and critiqued.   If that member's operation is sloppy, we do not hesitate to say so.

16.    In September, 2017, the peer group visited the Debtor in McMinnville and spent a couple of days examining the Debtor's books and records, interviewing staff and looking for problems.   The members of the peer group made suggestions about changes they believe would help the business, noted that the Debtor had already applied many suggestions and lessons from a prior visit in year 2014 and commented on the positive aspects of the business.

## III.    NAMES OF ENTITIES ASSERTING AN INTEREST IN CASH COLLATERAL.

17.    The entities asserting an interest in cash collateral are described in the Report. The information was provided from the Debtor's business records.

## IV.    PROBLEMS LEADING TO THE FILING AND POTENTIAL SOLUTIONS.

18.    There are various reasons for the Debtor's financial difficulties:

- •    The construction industry in and around McMinnville is doing well. There is a lot of work, actually, too much work.   Subcontractors can take

whichever jobs they want, not follow deadlines and over-bill ... and get away with these behaviors.

- There were cost overruns on some jobs due to a lack of oversight by Debtor personnel.

- The Debtor was not turning down work, even work that might have poor margins or property owners who were difficult people.

- With the shortage of subs, in the past year or two, jobs have been taking longer and longer to complete. This increases costs.

- The Debtor was not maintaining its financial books and records as well as perhaps it should have done.

- In 2016, the Debtor had 3 customers in the design phase who delayed construction work for up to one year. This happened again in 2017.

- The Debtor was fronting too many costs on construction sites.

- The Debtor took on too many jobs at one time.

- Last year at the J.C. project, the house caught fire. The homeowner then lacked fire insurance. The Debtor made accommodations to the bill something it turns out the Debtor could not afford to do. (The Debtor is more proactive now in making sure property owners both have and maintain their insurances.)

19. To fix the problems that led to this bankruptcy filing, the Debtor has implemented or will implement, the procedures and changes described below. Some of these changes may not work; others may.

- The Debtor is limiting the pricing in its contracts for 90 days or less. The Debtor has added in to its contracts an escalation clause for increased costs of lumber, drywall, concrete and roofing.

- The Debtor now requires subs to work through the Debtor's P.O. system to help manage costs and timeliness.

- The Debtor has increased its accounting staff.

- The Debtor is building its own preferred subcontractor list to have at least 3 subcontractors per trade, e.g., plumbing, roofing, electrical, in order to solicit more competitive bids.

- As homes are completed, the Debtor will stop using some subs who have been unreliable.

- For lender financed construction jobs, the Debtor is now demanding a deposit to help cover up-front expenses and avoiding the problem of the Debtor having to carry the front loaded expenses.

20.    That the Debtor recognizes these problems and has identified potential solutions makes it more likely that the Debtor will successfully reorganize.

## V.    THE DEBTOR'S PRESENT STATUS.

21.    The Debtor presently has 6 construction jobs ongoing with a total contract price of roughly $2.59 million. The margins range from 17% to 25%. The Debtor has additional jobs which will start in the next few months.  The aggregate gross dollar value of the additional jobs exceeds $1.9 million and the Debtor has bid for jobs of an additional $3.8 million.  As part of the Debtor's business model, it has a steady stream of jobs which come from customers who are in the design phase with the Debtor.  Typical charges for the design contract work range from $5,000 to $12,000.  The Debtor presently has 4 or 5 jobs in the design phase.

22.    In the Report to which my declaration is attached, there is a discussion of most of the Debtor's jobs.  The information in the Report is taken from information

which I have provided for this Report. The information is reliable to the best of my knowledge as of today.

2. <u>Post-Petition Matters - Business and Financial</u>

23. The Debtor will not reach the projection gross revenues post-petition for the following reasons:

A. The presence of mechanics liens on 3 jobs where monies are owed has caused the construction lenders to decline to pay the Debtor. The lenders want the mechanic liens cleared from title. The Debtor does not have a clear path to doing so without authorizing payment of prepetition claims to the mechanic lien claimants. Also, there is effectively no profit for the Debtor (or even a serious amount of money for cash flow) if the Debtor could authorize such payments. It seems that the better strategy is to reject these four construction contracts and to incur the damage to reputation instead. We had believed that with the chapter 11 filing, the lenders would release the funds. The Debtor does not expect to realize the gross revenue which it had initially projected.

B. One on-going job without mechanics liens, the D.L. job, has the property owner refusing to sign off on the monthly draw request to the construction lender. The property owner had contended that the Debtor was seeking to draw more than what it was entitled to draw. I made a point of agreeing to every one of the property owner's demands but the property owner is not interested in signing off on the draw request. The property owner is acting in less than good faith and is seeking inappropriate advantages. This property owner has hired an attorney. The Debtor has stopped work on the D.L. job pending resolution. This

will cost the Debtor revenue of approximately $21,520 which the Debtor had forecast to be paid during the week ending November 17th.

24. As a result, there are some small post-petition payables which the Debtor expects to pay in the week prior to November 20th.

25. To reflect the changes in revenues the Debtor has experienced, and over the past couple of days, the Debtor has prepared a revised projection of gross revenues, COGS, expenses, net and cash flow. It is meant to supplant the projection attached to the previously filed Amended Motion for Use of Cash Collateral on a Final Basis. The revised projection reflects lowered revenues and some changes to COGS. In addition, expenses in the week ending 11/10 were moved to the next week due to a lack of funds.

26. The Debtor has four lenders it has utilized when a construction loan was needed. Two lenders are more expensive than the other two. Post-petition the Debtor has had one of the lower cost construction lenders inform the Debtor that it would not approve new construction loans for the Debtor during the chapter 11 case and declined to fund one pending construction loan for a project ready to go. Conversely, the second lower cost lender has informed the Debtor that despite the chapter 11 filing, it will fund construction loans and will increase to ten (10) the number of construction loans it will fund at any one time where the Debtor is the general contractor. The Debtor is attempting to change the first lender's declination.

27. Some sub-contractors are continuing to do business with the Debtor on credit terms; others are not.

28. I have been informing property owners about the chapter 11 filing, including property owners whose properties are encumbered by mechanic liens.

SCHEDULING AND CASE MANAGEMENT
CONFERENCE REPORT

29. On November 8th, an arbitration was held in New Jersey in an action Swift Financial brought against the Debtor, my wife and me. I do not claim to understand what happened. I listened on the phone. I believe that the arbitrator awarded monies against my wife and me.

30. Knight Capital brought suit prepetition against the Debtor for breach of contract and against the Burtons on guaranties in Florida state court. It is my understanding that Knight took a judgment against my wife and me.

31. One vendor has threatened to file a mechanic lien post-petition for monies owed prepetition and it has also agreed to provide credit post-petition to the Debtor.

32. As a result of all of this, the Debtor's first few weeks in Chapter 11 have not been easy. Some jobs are stalled, at least for the moment. Other jobs are moving forward smoothly.

   3. <u>Post-Petition Moving Forward</u>

33. As the shock of the filing wears off, business will return closer to normal. Property owners will get past unease from the filing. Sub-contractors, being paid post-petition for post-petition work, will be less uncomfortable too. With one of the two less expensive banks doing construction loans, the Debtor will be able to obtain construction loans for its newer clients. The Report provides more information about specific jobs.

34. I am applying for monies to be secured by my properties and the monies would be used to help the Debtor reorganize. The Debtor will have needs for funding on a short term basis in the event that its cash on hand runs too low.

It will likely need funds to exit chapter 11.

Executed on November 13, 2017.

I declare under the penalty of perjury and under the laws of the U.S. of America that the foregoing is true and correct.


_\_\_/s/ Andrew Burton_____
Andrew Burton

# CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2017, I served the following SCHEDULING AND CASE MANAGEMENT CONFERENCE REPORT by depositing in the United States mail at Encino, California full and complete copies thereof, by first class mail, postage prepaid, or email transmission where indicated, addressed to the following:

None

I hereby certify that on November 13, 2017, I determined from the United States Bankruptcy Court electronic case filing system that the following parties will be served electronically via ECF:

**Local Counsel for Debtor:** KEITH Y BOYD ecf@boydlegal.net, arnold@boydlegal.net
**Counsel for Debtor:** Steven R Fox emails@foxlaw.com

**Counsel for Canby Drywall, Inc.:** DOUGLAS L GALLAGHER doug@dglawoffice.com, douglasgallagherlawoffice@gmail.com

**Counsel for Ferguson Enterprises, Inc.:** LAURIE R HAGER lhager@sussmanshank.com, ecf.laurie.hager@sussmanshank.com
**Counsel for Swift Financial Corp.:** JAMES P LAURICK jlaurick@kilmerlaw.com, tparcell@kilmerlaw.com
**Trustee:** US Trustee, Portland USTPRegion18.PL.ECF@usdoj.gov

**Trustee:** SONIA ZAHEER sonia.zaheer@usdoj.gov

Dated: November 13, 2017          THE FOX LAW CORPORATION


By__/s/ Sandy Cuevas_____
    Sandy Cuevas,
    Legal Assistant

# Exhibit "A"

Creekside Homes, Inc.
Projection of Cash Receipts and
Disbursements
For the 4-month period ending 2/28/18

| For the week ending: | 11/3/17 | 11/10/17 | 11/17/17 | 11/24/17 | 12/1/17 | 12/8/17 |
|---|---|---|---|---|---|---|
| Revenue | 4,080 | - | 106,000 | 25,250 | 10,730 | 30,000 |
| COGS -Labor & Material | - | 1,000 | 61,000 | 3,000 | 4,000 | 30,500 |
| Gross Profit | 4,080 | (1,000) | 45,000 | 22,250 | 6,730 | (500) |
| Expenses | | | | | | |
| Advertising/Marketing | 1,750 | | | | 2,750 | |
| Auto Expense (Leases and fuel) | | | 1,801 | | 1,100 | 1,801 |
| Bookkeeping | 500 | | 500 | | 500 | |
| Insurance -Liab, Auto & WC | 3,240 | | | | 3,240 | |
| Payroll -Officers | | | 8,200 | | | |
| Payroll-admin, PR Tax and fees | | | 16,500 | | | |
| Office & Admin Expenses | | | 2,175 | 2,175 | | 2,175 |
| Rent Expense | 1,120 | | | | 1,120 | |
| Repairs & Maintenance | | | 200 | 200 | - | 200 |
| Shop Supplies & Small Tools | 250 | | 250 | | 250 | |
| Telephone and Utilities | | | | 1,100 | | |
| US Trustee Fees | | | | | | |
| Total Expense | 6,860 | - | 29,626 | 3,475 | 8,960 | 4,176 |
| Net Ordinary Income | (2,780) | (1,000) | 15,374 | 18,775 | (2,230) | (4,676) |
| | | | | | | |
| Beginning Cash as of 10/30/17 | 4,243 | | | | | |
| Projected Ending Cash | 1,463 | 463 | 15,837 | 34,612 | 32,382 | 27,706 |

Creekside Homes, Inc.
Projection of Cash Receipts and
Disbursements
For the 4-month period ending 2/28/18

| For the week ending: | 12/15/17 | 12/22/17 | 12/29/17 | Jan | Feb | TOTAL |
|---|---|---|---|---|---|---|
| Revenue | 130,000 | 5,680 | 38,459 | 320,000 | 258,000 | 928,199 |
| COGS -Labor & Material | 88,000 | 26,000 | 30,000 | 273,800 | 224,820 | 742,120 |
| Gross Profit | 42,000 | (20,320) | 8,459 | 46,200 | 33,180 | 186,079 |
| Expenses | | | | | | |
| Advertising/Marketing | | | | 2,750 | 2,750 | 10,000 |
| Auto Expense (Leases and fuel) | | | 1,100 | 2,901 | 2,901 | 11,604 |
| Bookkeeping | 500 | | | 1,000 | 1,000 | 4,000 |
| Insurance -Liab, Auto & WC | | | | 3,240 | 3,240 | 12,960 |
| Payroll -Officers | 8,200 | | | 8,200 | 8,200 | 32,800 |
| Payroll-admin, PR Tax and fees | 16,500 | | | 16,500 | 16,500 | 66,000 |
| Office & Admin Expenses | | 2,175 | | 4,350 | 4,350 | 17,400 |
| Rent Expense | | | | 1,120 | 1,120 | 4,480 |
| Repairs & Maintenance | | 200 | | 400 | 400 | 1,600 |
| Shop Supplies & Small Tools | 250 | | | 500 | 500 | 2,000 |
| Telephone and Utilities | 1,100 | | | 1,100 | 1,100 | 4,400 |
| US Trustee Fees | | | | 4,875 | | 4,875 |
| Total Expense | 26,550 | 2,375 | 1,100 | 46,936 | 42,061 | 172,119 |
| Net Ordinary Income | 15,450 | (22,695) | 7,359 | (736) | (8,881) | 13,960 |
| | | | | | | |
| Beginning Cash as of 10/30/17 | | | | | | |
| Projected Ending Cash | 43,156 | 20,461 | 27,820 | 27,084 | 18,203 | 18,203 |

## Work In Progress

| Customer ID | 11/3/17 | 11/10/17 | 11/17/17 | 11/24/17 | 12/1/17 | 12/8/17 | 12/15/17 | 12/22/17 | 12/29/17 | Jan | Feb | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CL | | | | | 4,730 | | | | | 50,000 | 10,000 | 64,730 |
| CS | 1,400 | | 36,000 | | | | 20,000 | | | 60,000 | 30,000 | 147,400 |
| DG | 2,680 | | - | 21,250 | | | 40,000 | | | 30,000 | 40,000 | 112,680 |
| DL | | | | | | 30,000 | | | 38,459 | | | 89,709 |
| JC | | | | | | | - | - | | - | - | - |
| KG | | | 50,000 | | | | 40,000 | | | 45,000 | 45,000 | 180,000 |
| TS | | | 20,000 | | | | 30,000 | | | 45,000 | 45,000 | 140,000 |
| DA | | | | 4,000 | | | | | | | 3,000 | 7,000 |
| KK | | | | | 6,000 | | | | | 40,000 | 40,000 | 86,000 |
| AB | | | | - | | | - | | | - | - | - |
| RB | | | | | | | | 5,680 | | 50,000 | 45,000 | 100,680 |
| **Total Revenue** | 4,080 | - | 106,000 | 25,250 | 10,730 | 30,000 | 130,000 | 5,680 | 38,459 | 320,000 | 258,000 | 928,199 |

Cost of Goods Sold

| Customer ID | 11/3/17 | 11/10/17 | 11/17/17 | 11/24/17 | 12/1/17 | 12/8/17 | 12/15/17 | 12/22/17 | 12/29/17 | Jan | Feb | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CL | | | | | 4,000 | | | | | 39,500 | 7,900 | 51,400 |
| CS | | | 15,000 | | | | 10,000 | | | 47,400 | 23,700 | 96,100 |
| DG | | | | | | | 25,000 | | | 23,700 | 31,600 | 80,300 |
| DL | | 1,000 | | 3,000 | | | | | | - | - | 4,000 |
| JC | | | | | | 25,000 | | | 30,000 | | | 55,000 |
| KG | | | 18,500 | | | | 28,000 | | | 35,550 | 35,550 | 117,600 |
| TS | | | 6,500 | | | | 25,000 | | | 35,550 | 35,550 | 102,600 |
| BA | | | | | | | | | | | 2,370 | 2,370 |
| KK | | | | | | 5,500 | | | | 31,600 | 31,600 | 68,700 |
| AB | | | | | | | | | | - | - | - |
| RB | | | | | | | | 5,000 | | 39,500 | 35,550 | 80,050 |
| Total Material Pay'ts | - | 1,000 | 40,000 | 3,000 | 4,000 | 30,500 | 88,000 | 5,000 | 30,000 | 252,800 | 203,820 | 658,120 |
| Labor | | | 21,000 | | | | | 21,000 | | 21,000 | 21,000 | 84,000 |
| Total COGS | - | 1,000 | 61,000 | 3,000 | 4,000 | 30,500 | 88,000 | 26,000 | 30,000 | 273,800 | 224,820 | 742,120 |

Footnotes:

| | |
|---|---|
| Revenue - | Based upon the schedule of Work in Progress above. |
| COGS -Labor & Material | The debtor historically bids jobs at cost plus 30%, resulting in bids @ 24 % gross margin. This margin has not been achieved in recent historicals. Hence, this line item is the area that has been targeted for reorganization. |
| Advertising/Marketing | Website hosting, sales funnel management, and guerilla marketing. |
| Auto Expense (Leases and fuel) | Three auto leases, $491, $482, and $828, plus fuel costs estimated $1100/mo based on YTD fuel expense. |
| Bookkeeping | Cost to administer financial statements and prepare monthly operating reports. |
| Insurance -Liab, Auto & WC | General liability $1600/mo, Auto $640/mo, Workers comp estimate of $1000/mo. |
| Payroll -Officers | Officers payroll includes both Andrew and Sarah Burton, gross wages. |
| Payroll & PR Tax- Admin | Admin payroll plus PR taxesand processing fees for Admin, Officers, and Direct labor. |
| Office & Admin Expenses | Based on historical expenses YTD. See table 1 below. |
| Rent Expense | Per current lease agreement. |
| Repairs & Maintenance | Includes cleaning of office, uniforms, and repairs. |
| Shop Supplies & Small Tools | Based on historical expenses, YTD. |
| Telephone and Utilities | Based on historical expenses, YTD. |
| US Trustee Fees | According to the US Trustee Fee Schedule. |

| Table 1 - Office & Admin Expense | Per month |
|---|---|
| Bus license, taxes, permits & fees | 400 |
| Computer and Internet Expense | 300 |
| Dues, Subscriptions, Training and Benes | 1,300 |
| Printing and postage | 250 |
| Office supplies and expense | 2,100 |
| Total | 4,350 |

Exhibit "A" Page 6 of 8

| Custom er ID | 11/3/17 | 11/10/17 | 11/17/17 | 11/24/17 | 12/1/17 | 12/8/17 | 12/15/17 | 12/22/17 | 12/29/17 | Jan | Feb | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CL | | 4,730 | | | | | | | | 50,000 | 10,000 | 64,730 |
| CS | 1,400 | | | 36,000 | | | 20,000 | | | 60,000 | 30,000 | 147,400 |
| DG | 2,680 | | | | | | 40,000 | | | 30,000 | 40,000 | 112,680 |
| DL | | | 80,000 | | | | | | | | | 80,000 |
| JC | | | | | | | 40,000 | | | 50,000 | 40,000 | 130,000 |
| KG | | | 40,000 | | | | | | | | | 40,000 |
| TS | | | 30,000 | | | | | | | | | 30,000 |
| BA | | | | 4,000 | | | | | | | 3,000 | 7,000 |
| KK | | | | | | | | | | 40,000 | 40,000 | 80,000 |
| AB | | | | 30,000 | | | 40,000 | | | 40,000 | 60,000 | 170,000 |
| RB | | | | | | | | | | 50,000 | 45,000 | 95,000 |
| Total Revenu e | 4,080 | 4,730 | 150,000 | 70,000 | - | - | 140,000 | | | 320,000 | 268,000 | 956,810 |

Exhibit "A" Page 7 of 8

**Revised**

**Revenue**

| Customer | 11/3/17 | 11/10/17 | 11/17/17 | 11/24/17 | 12/1/17 | 12/8/17 | 12/15/17 | 12/22/17 | 12/29/17 | Jan | Feb | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CL | | | | | 4,730 | | | | | 50,000 | 10,000 | 64,730 |
| CS | 1,400 | | 36,000 | | | | 20,000 | | | 60,000 | 30,000 | 147,400 |
| DG | 2,680 | | | | | | 40,000 | | | 30,000 | 40,000 | 112,680 |
| DL | | | - | 21,250 | | 30,000 | | | 38,459 | | - | 89,709 |
| JC | | | | | | | - | | | - | - | |
| KG | | | 50,000 | | | | 40,000 | | | 45,000 | 45,000 | 180,000 |
| TS | | | 20,000 | | | | 30,000 | | | 45,000 | 45,000 | 140,000 |
| DA | | | | 4,000 | | | | | | | 3,000 | 7,000 |
| KK | | | | | 6,000 | | | | | 40,000 | 40,000 | 86,000 |
| AB | | | - | - | | | - | | | - | - | |
| RB | | | | | | | | 5,680 | | 50,000 | 45,000 | 100,680 |
| **Total Revenue** | 4,080 | - | 106,000 | 25,250 | 10,730 | 30,000 | 130,000 | 5,680 | 38,459 | 320,000 | 258,000 | 928,199 |

**Notes**

CL — Customer is still selecting finishes and we are still pricing out construction. We are projecting the completion in December.

CS — CS sent the check out this last Thursday. Sooner than expected!

DG — The property owner is seeking a construction loan with the lender which will work with the Debtor. If the loan is approved, construction would begin in December, 2017 and conclude in or about July, 2018.

DL — DL is being difficult. He hasn't signed the draw request. He may or may not sign it. We hope to retain the contract and have this home finished in December.

JC — The property owner is uncomfortable with the chapter 11 filing and the Debtor is asking the owner to reconsider. This job should begin in January, 2018 and end in or about November, 2018.

KG — We placed the draw request for a little more than projected originally.

TS — We had delays with foundation crew. Things are back on track now.

BA —

KK — The project is awaiting permits. Construction should begin in January, 2018 and conclude in November, 2018.

AB — This project fell by the wayside as a result of the chapter 11 filing.

RB — We are hoping to have this customer complete with Design in December and ready to move to construction.

Exhibit "A" Page 8 of 8

# Exhibit "B"

| Schedule K | Shareholders' Pro Rata Share Items | | | Total amount |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| **Income (Loss)** | 1 Ordinary business income (loss) (page 1, line 21)............................... | | **1** | 30,242. |
| | 2 Net real estate income (loss) (attach Form 8825)............................... | | **2** | |
| | 3a Other gross rental income (loss)............................. | **3a** | | |
| | b Expenses from other rental activities (attach statement)................ | **3b** | | |
| | c Other net rental income (loss). Subtract line 3b from line 3a............. | | **3c** | |
| | 4 Interest income.................................................... | | **4** | |
| | 5 Dividends:  a Ordinary dividends............................. | | **5a** | |
| | b Qualified dividends............................. | **5b** | | |
| | 6 Royalties....................................................... | | **6** | |
| | 7 Net short-term capital gain (loss) (attach Schedule D (Form 1120S))....... | | **7** | |
| | 8a Net long-term capital gain (loss) (attach Schedule D (Form 1120S))....... | | **8a** | |
| | b Collectibles (28%) gain (loss).......................... | **8b** | | |
| | c Unrecaptured section 1250 gain (attach statement)................ | **8c** | | |
| | 9 Net section 1231 gain (loss) (attach Form 4797).................... | | **9** | |
| | 10 Other income (loss) (see instructions).......... Type ▶ | | **10** | |
| **Deductions** | 11 Section 179 deduction (attach Form 4562)........................... | | **11** | |
| | 12a Charitable contributions.................. SEE STATEMENT 3 | | **12a** | 1,000. |
| | b Investment interest expense.................................... | | **12b** | |
| | c Section 59(e)(2) expenditures **(1)** Type ▶ _____ **(2)** Amount ▶ | | **12c (2)** | |
| | d Other deductions (see instructions)... Type ▶        SEE STATEMENT 4 | | **12d** | |
| **Credits** | 13a Low-income housing credit (section 42(j)(5))..................... | | **13a** | |
| | b Low-income housing credit (other).............................. | | **13b** | |
| | c Qualified rehabilitation expenditures (rental real estate) (attach Form 3468, if applicable).... | | **13c** | |
| | d Other rental real estate credits (see instrs)  Type ▶ _____ | | **13d** | |
| | e Other rental credits (see instrs)  Type ▶ _____ | | **13e** | |
| | f Biofuel producer credit (attach Form 6478) _____ | | **13f** | |
| | g Other credits (see instructions)....... Type ▶ | | **13g** | |
| **Foreign Trans-actions** | 14a Name of country or U.S. possession        ▶ _____ | | | |
| | b Gross income from all sources................................... | | **14b** | |
| | c Gross income sourced at shareholder level...................... | | **14c** | |
| | Foreign gross income sourced at corporate level | | | |
| | d Passive category.............................................. | | **14d** | |
| | e General category.............................................. | | **14e** | |
| | f Other (attach statement)....................................... | | **14f** | |
| | Deductions allocated and apportioned at shareholder level | | | |
| | g Interest expense.............................................. | | **14g** | |
| | h Other......................................................... | | **14h** | |
| | Deductions allocated and apportioned at corporate level to foreign source income | | | |
| | i Passive category.............................................. | | **14i** | |
| | j General category.............................................. | | **14j** | |
| | k Other (attach statement)....................................... | | **14k** | |
| | Other information | | | |
| | l Total foreign taxes (check one): ▶ ☐ Paid  ☐ Accrued.......... | | **14l** | |
| | m Reduction in taxes available for credit (attach statement) | | **14m** | |
| | n Other foreign tax information (attach statement) | | | |
| **Alternative Minimum Tax (AMT) Items** | 15a Post-1986 depreciation adjustment............................... | | **15a** | -66. |
| | b Adjusted gain or loss......................................... | | **15b** | |
| | c Depletion (other than oil and gas).............................. | | **15c** | |
| | d Oil, gas, and geothermal properties — gross income............ | | **15d** | |
| | e Oil, gas, and geothermal properties — deductions.............. | | **15e** | |
| | f Other AMT items (attach statement)............................ | | **15f** | |
| **Items Affecting Shareholder Basis** | 16a Tax-exempt interest income................................... | | **16a** | |
| | b Other tax-exempt income..................................... | | **16b** | |
| | c Nondeductible expenses................... SEE STATEMENT 5 | | **16c** | 3,622. |
| | d Distributions (attach stmt if required) (see instrs)................ | | **16d** | 46,727. |
| | e Repayment of loans from shareholders | | **16e** | |

Exhibit "B" Page 2 of 9

Case 17-33893-tmb11   Doc 48   Filed 11/13/17

| Schedule K | Shareholders' Pro Rata Share Items (continued) | | | | Total amount |
|---|---|---|---|---|---|
| Other Infor- mation | **17 a** Investment income | | | **17a** | |
| | **b** Investment expenses | | | **17b** | |
| | **c** Dividend distributions paid from accumulated earnings and profits | | | **17c** | |
| | **d** Other items and amounts (attach statement) | | | | |
| Recon- ciliation | **18** **Income/loss reconciliation.** Combine the amounts on lines 1 through 10 in the far right column. From the result, subtract the sum of the amounts on lines 11 through 12d and 14l | | | **18** | 29,242. |

| Schedule L | Balance Sheets per Books | Beginning of tax year | | End of tax year | |
|---|---|---|---|---|---|
| | **Assets** | (a) | (b) | (c) | (d) |
| **1** | Cash | | 54,291. | | |
| **2a** | Trade notes and accounts receivable | | | | |
| **b** | Less allowance for bad debts | | | | |
| **3** | Inventories | | | | |
| **4** | U.S. government obligations | | | | |
| **5** | Tax-exempt securities (see instructions) | | | | |
| **6** | Other current assets (attach stmt) . . . . SEE ST 6 | | 8,010. | | 159,074. |
| **7** | Loans to shareholders | | | | |
| **8** | Mortgage and real estate loans | | | | |
| **9** | Other investments (attach statement) | | | | |
| **10a** | Buildings and other depreciable assets | 12,596. | | 35,111. | |
| **b** | Less accumulated depreciation | 12,329. | 267. | 15,725. | 19,386. |
| **11a** | Depletable assets | | | | |
| **b** | Less accumulated depletion | | | | |
| **12** | Land (net of any amortization) | | | | |
| **13a** | Intangible assets (amortizable only) | | | | |
| **b** | Less accumulated amortization | | | | |
| **14** | Other assets (attach stmt) | | | | |
| **15** | Total assets | | 62,568. | | 178,460. |
| | **Liabilities and Shareholders' Equity** | | | | |
| **16** | Accounts payable | | | | |
| **17** | Mortgages, notes, bonds payable in less than 1 year | | | | |
| **18** | Other current liabilities (attach stmt) SEE ST 7 | | 30,322. | | 76,697. |
| **19** | Loans from shareholders | | | | |
| **20** | Mortgages, notes, bonds payable in 1 year or more | | | | 90,624. |
| **21** | Other liabilities (attach statement) | | | | |
| **22** | Capital stock | | 10,000. | | 10,000. |
| **23** | Additional paid-in capital | | | | |
| **24** | Retained earnings | | 22,246. | | 1,139. |
| **25** | Adjustments to shareholders' equity (att stmt) | | | | |
| **26** | Less cost of treasury stock | | | | |
| **27** | Total liabilities and shareholders' equity | | 62,568. | | 178,460. |

SPSA0134L  08/17/16                                                        Form **1120S** (2016)

Exhibit "B" Page 3 of 9

## Schedule M-1 — Reconciliation of Income (Loss) per Books With Income (Loss) per Return
**Note:** The corporation may be required to file Schedule M-3 (see instructions)

| | | | | | |
|---|---|---|---|---|---|
| 1 | Net income (loss) per books.................. | 25,620. | 5 | Income recorded on books this year not included on Schedule K, lines 1 through 10 (itemize): | |
| 2 | Income included on Schedule K, lines 1, 2, 3c, 4, 5a, 6, 7, 8a, 9, and 10, not recorded on books this year (itemize): | | a | Tax-exempt interest . $ _____ | |
| 3 | Expenses recorded on books this year not included on Schedule K, lines 1 through 12, and 14l (itemize): | | 6 | Deductions included on Schedule K, lines 1 through 12 and 14l, not charged against book income this year (itemize): | |
| a | Depreciation....... $ _____ | | a | Depreciation.... $ _____ | |
| b | Travel and entertainment.. $ ____3,622. | 3,622. | 7 | Add lines 5 and 6.................... | 0. |
| 4 | Add lines 1 through 3.................... | 29,242. | 8 | Income (loss) (Schedule K, ln 18). Ln 4 less ln 7.... | 29,242. |

## Schedule M-2 — Analysis of Accumulated Adjustments Account, Other Adjustments Account, and Shareholders' Undistributed Taxable Income Previously Taxed (see instructions)

| | | (a) Accumulated adjustments account | (b) Other adjustments account | (c) Shareholders' undistributed taxable income previously taxed |
|---|---|---|---|---|
| 1 | Balance at beginning of tax year................................ | 22,246. | | |
| 2 | Ordinary income from page 1, line 21............................ | 30,242. | | |
| 3 | Other additions.................................................. | | | |
| 4 | Loss from page 1, line 21........................................ | | | |
| 5 | Other reductions............... SEE STATEMENT 8 .... | ( 4,622.) | | |
| 6 | Combine lines 1 through 5....................................... | 47,866. | | |
| 7 | Distributions other than dividend distributions.................. | 46,727. | | |
| 8 | Balance at end of tax year. Subtract line 7 from line 6.............. | 1,139. | | |

SPSA0134L  08/17/16

Form **1120S** (2016)

Exhibit "B" Page 4 of 9

**Form 1125-A**
(Rev October 2016)

Department of the Treasury
Internal Revenue Service

## Cost of Goods Sold

► Attach to Form 1120, 1120-C, 1120-F, 1120S, 1065, or 1065-B.
► Information about Form 1125-A and its instructions is at *www.irs.gov/form1125a.*

OMB No. 1545-0123

| Name | Employer identification number |
|---|---|
| CREEKSIDE HOMES, INC. ANDREW BURTON CONSTRUCTION | ●●-●●9642 |

| | | | |
|---|---|---|---|
| 1 | Inventory at beginning of year. | **1** | |
| 2 | Purchases | **2** | 3,277,379. |
| 3 | Cost of labor | **3** | |
| 4 | Additional section 263A costs (attach schedule) | **4** | |
| 5 | Other costs (attach schedule). SEE STATEMENT 9 | **5** | 73,485. |
| 6 | **Total.** Add lines 1 through 5 | **6** | 3,350,864. |
| 7 | Inventory at end of year. | **7** | |
| 8 | **Cost of goods sold.** Subtract line 7 from line 6. Enter here and on Form 1120, page 1, line 2 or the appropriate line of your tax return. See instructions | **8** | 3,350,864. |

**9a** Check all methods used for valuing closing inventory:
  (i) ☐ Cost
  (ii) ☐ Lower of cost or market
  (iii) ☐ Other (Specify method used and attach explanation) . . . . ► _____

  **b** Check if there was a writedown of subnormal goods. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ► ☐

  **c** Check if the LIFO inventory method was adopted this tax year for any goods (if checked, attach Form 970) . . . . . . . . . . . . . . . . . . ► ☐

  **d** If the LIFO inventory method was used for this tax year, enter amount of closing inventory computed under LIFO . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9d**

  **e** If property is produced or acquired for resale, do the rules of section 263A apply to the entity? See instructions . . . . . . . . ☐ Yes ☐ No

  **f** Was there any change in determining quantities, cost, or valuations between opening and closing inventory? If 'Yes,' attach explanation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

**BAA  For Paperwork Reduction Act Notice, see instructions.**                    Form **1125-A** (Rev 10-2016)

CPCZ0401L   08/17/16

Exhibit "B" Page 5 of 9

| Schedule K | Shareholders' Pro Rata Share Items | | Total amount |
|---|---|---|---|
| **Income (Loss)** | **1** Ordinary business income (loss) (page 1, line 21)........................... | **1** | 67,282. |
| | **2** Net rental real estate income (loss) (attach Form 8825)....................... | **2** | |
| | **3a** Other gross rental income (loss)........................ **3a** | | |
| | **b** Expenses from other rental activities (attach statement)............ **3b** | | |
| | **c** Other net rental income (loss). Subtract line 3b from line 3a................ | **3c** | |
| | **4** Interest income............................................ | **4** | |
| | **5** Dividends: **a** Ordinary dividends................................ | **5a** | |
| | **b** Qualified dividends......................... **5b** | | |
| | **6** Royalties.............................................. | **6** | |
| | **7** Net short-term capital gain (loss) (attach Schedule D (Form 1120S))............ | **7** | |
| | **8a** Net long-term capital gain (loss) (attach Schedule D (Form 1120S))........... | **8a** | |
| | **b** Collectibles (28%) gain (loss)....................... **8b** | | |
| | **c** Unrecaptured section 1250 gain (attach statement)............... **8c** | | |
| | **9** Net section 1231 gain (loss) (attach Form 4797)...................... | **9** | |
| | **10** Other income (loss) (see instructions).......... Type ▶ | **10** | |
| **Deductions** | **11** Section 179 deduction (attach Form 4562)............................ | **11** | 4,049. |
| | **12a** Charitable contributions.......................... SEE STATEMENT 2 .... | **12a** | 13,859. |
| | **b** Investment interest expense.................................... | **12b** | |
| | **c** Section 59(e)(2) expenditures **(1)** Type ▶ _ _ _ _ _ _ _ _ _ _ _ _ _ _ **(2)** Amount ▶ | **12c (2)** | |
| | **d** Other deductions (see instructions)... Type ▶ | **12d** | |
| **Credits** | **13a** Low-income housing credit (section 42(j)(5))...................... | **13a** | |
| | **b** Low-income housing credit (other)................................ | **13b** | |
| | **c** Qualified rehabilitation expenditures (rental real estate) (attach Form 3468, if applicable) ............. | **13c** | |
| | **d** Other rental real estate credits (see instrs)  Type ▶ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | **13d** | |
| | **e** Other rental credits (see instrs)  Type ▶ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | **13e** | |
| | **f** Biofuel producer credit (attach Form 6478)........................ | **13f** | |
| | **g** Other credits (see instructions)........ Type ▶ | **13g** | |
| **Foreign Trans- actions** | **14a** Name of country or U.S. possession         ▶ _ _ _ _ _ _ _ _ _ _ _ _ _ | | |
| | **b** Gross income from all sources.................................. | **14b** | |
| | **c** Gross income sourced at shareholder level.......................... | **14c** | |
| | Foreign gross income sourced at corporate level | | |
| | **d** Passive category............................................ | **14d** | |
| | **e** General category.......................................... | **14e** | |
| | **f** Other (attach statement)...................................... | **14f** | |
| | Deductions allocated and apportioned at shareholder level | | |
| | **g** Interest expense.......................................... | **14g** | |
| | **h** Other.................................................. | **14h** | |
| | Deductions allocated and apportioned at corporate level to foreign source income | | |
| | **i** Passive category........................................... | **14i** | |
| | **j** General category.......................................... | **14j** | |
| | **k** Other (attach statement)..................................... | **14k** | |
| | Other information | | |
| | **l** Total foreign taxes (check one): ▶ ☐ Paid     ☐ Accrued.......... | **14l** | |
| | **m** Reduction in taxes available for credit (attach statement) | **14m** | |
| | **n** Other foreign tax information (attach statement) | | |
| **Alter- native Mini- mum Tax (AMT) Items** | **15a** Post-1986 depreciation adjustment ............................ | **15a** | -67. |
| | **b** Adjusted gain or loss ...................................... | **15b** | |
| | **c** Depletion (other than oil and gas) .............................. | **15c** | |
| | **d** Oil, gas, and geothermal properties — gross income............... | **15d** | |
| | **e** Oil, gas, and geothermal properties — deductions................ | **15e** | |
| | **f** Other AMT items (attach statement) ............................. | **15f** | |
| **Items Affec- ting Share- holder Basis** | **16a** Tax-exempt interest income.................................. | **16a** | |
| | **b** Other tax-exempt income.................................... | **16b** | |
| | **c** Nondeductible expenses.................................... | **16c** | 53. |
| | **d** Distributions (attach stmt if required) (see instrs)................... | **16d** | 27,076. |
| | **e** Repayment of loans from shareholders........................ | **16e** | |

| Schedule K | Shareholders' Pro Rata Share Items (continued) | | | Total amount |
|---|---|---|---|---|

| Other Infor- mation | 17a Investment income ............................................. | | | 17a | |
| | b Investment expenses ........................................... | | | 17b | |
| | c Dividend distributions paid from accumulated earnings and profits ......................... | | | 17c | |
| | d Other items and amounts (attach statement) | | | | |
| Recon- ciliation | **18 Income/loss reconciliation.** Combine the amounts on lines 1 through 10 in the far right column. From the result, subtract the sum of the amounts on lines 11 through 12d and 14l ............... | | | **18** | 49,374. |

| Schedule L | Balance Sheets per Books | Beginning of tax year | | End of tax year | |
|---|---|---|---|---|---|
| | **Assets** | (a) | (b) | (c) | (d) |
| 1 | Cash .................................... | | 4,221. | | 54,291. |
| 2a | Trade notes and accounts receivable ........ | | | | |
| b | Less allowance for bad debts ............... | | | | |
| 3 | Inventories ................................ | | | | |
| 4 | U.S. government obligations ................ | | | | |
| 5 | Tax-exempt securities (see instructions) ..... | | | | |
| 6 | Other current assets (attach stmt) .... SEE ST 3 . | | | | 8,010. |
| 7 | Loans to shareholders ..................... | | 7,662. | | |
| 8 | Mortgage and real estate loans ............. | | | | |
| 9 | Other investments (attach statement) ......... | | | | |
| 10a | Buildings and other depreciable assets ...... | 8,547. | | 12,596. | |
| b | Less accumulated depreciation ............. | 8,102. | 445. | 12,329. | 267. |
| 11a | Depletable assets ......................... | | | | |
| b | Less accumulated depletion ................ | | | | |
| 12 | Land (net of any amortization) .............. | | | | |
| 13a | Intangible assets (amortizable only) ......... | | | | |
| b | Less accumulated amortization ............. | | | | |
| 14 | Other assets (attach stmt) ................. | | | | |
| 15 | Total assets ............................. | | 12,328. | | 62,568. |
| | **Liabilities and Shareholders' Equity** | | | | |
| 16 | Accounts payable ......................... | | | | |
| 17 | Mortgages, notes, bonds payable in less than 1 year .... | | | | |
| 18 | Other current liabilities (attach stmt) . SEE ST 4 . | | 2,327. | | 30,322. |
| 19 | Loans from shareholders ................... | | | | |
| 20 | Mortgages, notes, bonds payable in 1 year or more ...... | | | | |
| 21 | Other liabilities (attach statement) .............. | | | | |
| 22 | Capital stock ............................. | | 10,000. | | 10,000. |
| 23 | Additional paid-in capital .................. | | | | |
| 24 | Retained earnings ........................ | | 1. | | 22,246. |
| 25 | Adjustments to shareholders' equity (att stmt) ........ | | | | |
| 26 | Less cost of treasury stock ................. | | | | |
| 27 | Total liabilities and shareholders' equity ..... | | 12,328. | | 62,568. |

SPSA0134L  08/13/15                                    Form **1120S** (2015)

Exhibit "B" Page 7 of 9

| **Schedule M-1** | **Reconciliation of Income (Loss) per Books With Income (Loss) per Return** | | |
|---|---|---|---|
| | **Note.** The corporation may be required to file Schedule M-3 (see instructions) | | |

| | | | | | |
|---|---|---|---|---|---|
| 1 | Net income (loss) per books.................. | 49,321. | 5 | Income recorded on books this year not included on Schedule K, lines 1 through 10 (itemize): | |
| 2 | Income included on Schedule K, lines 1, 2, 3c, 4, 5a, 6, 7, 8a, 9, and 10, not recorded on books this year (itemize): | | | **a** Tax-exempt interest $ _ _ _ _ _ _ _ _ _ _ | |
| | | | | | |
| 3 | Expenses recorded on books this year not included on Schedule K, lines 1 through 12, and 14l (itemize): | | 6 | Deductions included on Schedule K, lines 1 through 12 and 14l, not charged against book income this year (itemize): | |
| | **a** Depreciation ....... $ _ _ _ _ _ _ _ _ _ _ | | | **a** Depreciation .... $ _ _ _ _ _ _ _ _ _ _ | |
| | **b** Travel and entertainment. $ _ _ _ _ _ _ 53. | | | | |
| | _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | 53. | 7 | Add lines 5 and 6 ..................... | 0. |
| 4 | Add lines 1 through 3...................... | 49,374. | 8 | Income (loss) (Schedule K, ln 18). Ln 4 less ln 7... | 49,374. |

| **Schedule M-2** | **Analysis of Accumulated Adjustments Account, Other Adjustments Account, and Shareholders' Undistributed Taxable Income Previously Taxed** (see instructions) | | |
|---|---|---|---|

| | | **(a)** Accumulated adjustments account | **(b)** Other adjustments account | **(c)** Shareholders' undistributed taxable income previously taxed |
|---|---|---|---|---|
| 1 | Balance at beginning of tax year................................. | 1. | | |
| 2 | Ordinary income from page 1, line 21............................ | 67,282. | | |
| 3 | Other additions.................................................. | | | |
| 4 | Loss from page 1, line 21 ....................................... | | | |
| 5 | Other reductions.................... SEE STATEMENT 5 .... | ( 17,961.) | | |
| 6 | Combine lines 1 through 5 ...................................... | 49,322. | | |
| 7 | Distributions other than dividend distributions................. | 27,076. | | |
| 8 | Balance at end of tax year. Subtract line 7 from line 6 .............. | 22,246. | | |

SPSA0134L  08/13/15                                                Form **1120S** (2015)

# Cost of Goods Sold

► Attach to Form 1120, 1120-C, 1120-F, 1120S, 1065, or 1065-B.
► Information about Form 1125-A and its instructions is at *www.irs.gov/form1125a.*

OMB No. 1545-2225

| Name | Employer identification number |
|---|---|
| CREEKSIDE HOMES, INC. | ●–●●9642 |
| ANDREW BURTON CONSTRUCTION | |

| | | |
|---|---|---:|
| 1 | Inventory at beginning of year........................................... **1** | |
| 2 | Purchases.............................................................. **2** | 993,362. |
| 3 | Cost of labor (attach schedule)......................................... **3** | |
| 4 | Additional section 263A costs (attach schedule)........................... **4** | |
| 5 | Other costs (attach schedule)................. SEE STATEMENT 6 **5** | 55,182. |
| 6 | **Total.** Add lines 1 through 5.......................................... **6** | 1,048,544. |
| 7 | Inventory at end of year............................................... **7** | |
| 8 | **Cost of goods sold.** Subtract line 7 from line 6. Enter here and on Form 1120, page 1, line 2 or the appropriate line of your tax return (see instructions)............................. **8** | 1,048,544. |

**9a** Check all methods used for valuing closing inventory:
    *(i)* ☐ Cost
    *(ii)* ☐ Lower of cost or market
    *(iii)* ☐ Other (Specify method used and attach explanation).... ► _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
  **b** Check if there was a writedown of subnormal goods........................................ ► ☐
  **c** Check if the LIFO inventory method was adopted this tax year for any goods (if checked, attach Form 970)................. ► ☐
  **d** If the LIFO inventory method was used for this tax year, enter amount of closing inventory computed
    under LIFO...................................................................... **9d**
  **e** If property is produced or acquired for resale, do the rules of section 263A apply to the entity (see instructions)? ...... ☐ Yes ☐ No
  **f** Was there any change in determining quantities, cost, or valuations between opening and
    closing inventory? If 'Yes,' attach explanation ................................................. ☐ Yes ☐ No

**BAA For Paperwork Reduction Act Notice, see instructions.** Form **1125-A** (Rev 12-2012)

# Exhibit "C"

Creekside Homes, Inc.
Projection of Cash Receipts and Disbursements
For the 4-week Period ended 11/10/17

| For the week ending: | W. E. 10/20/17 | | | | W. E. 10/27/17 | | | |
|---|---|---|---|---|---|---|---|---|
| | Budget | Actual | Variance | As a | Budget | Actual | Variance | As a |
| Revenue | 27,680 | - | (27,680) | -100% | 17,045 | 2,936 | (14,109) | -83% |
| COGS -Labor & Material | | | - | | 35,000 | | (35,000) | |
| Gross Profit | 27,680 | - | (27,680) | -100% | (17,955) | 2,936 | 20,891 | -116% |
| Expenses | | | | | | | | |
| Advertising | | | | | 1,026 | | (1,026) | |
| Auto Expense (Leases and fuel) | | | | | 1,100 | | (1,100) | |
| Bookkeeping | 500 | | (500) | -100% | | 500 | 500 | |
| Insurance -Liab, Auto & WC | | | | | | | - | |
| Payroll -Officers | | | | | | | | |
| Payroll-admin, PR Tax and fees | | | | | 2,175 | 1,750 | 1,750 | |
| Office & Admin Expenses | | | | | | 6 | (2,169) | |
| Rent Expense | | | | | | | - | |
| Repairs & Maintenance | 200 | | (200) | -100% | | | - | |
| Shop Supplies & Small Tools | 250 | | (250) | -100% | | | - | |
| Telephone and Utilities | 1,100 | 371 | (729) | -66% | | | - | |
| US Trustee Fees | | | | | | | | |
| Total Expense | 2,050 | 371 | (371) | | 4,301 | 2,256 | | |
| Net Ordinary Income | 25,630 | (371) | | | (22,256) | 680 | | |

Beg Cash
Net Cash In/(Out)
Ending Cash

Exhibit "C" Page 2 of 4

Creekside Homes, Inc.
Projection of Cash Receipts and Disbursements
For the 4-week Period ended 11/10/17

| For the week ending: | W. E. 11/03/17 | | | | W. E. 11/10/17 | | | |
|---|---|---|---|---|---|---|---|---|
| | Budget | Actual | Variance | As a | Budget | Actual | Variance | As a |
| Revenue | 4,080 | - | (4,080) | -100% | 1,000 | 300 | (700) | -70% |
| COGS -Labor & Material | | | | | | | | |
| Gross Profit | 4,080 | - | (4,080) | -100% | 1,000 | 300 | (700) | -70% |
| Expenses | | | | | | | | |
| Advertising | 1,750 | - | (1,750) | -100% | | 1,750 | 1,750 | #DIV/0! |
| Auto Expense (Leases and fuel) | - | - | - | - | | | | |
| Bookkeeping | 500 | - | (500) | -100% | | 500 | 500 | #DIV/0! |
| Insurance -Liab, Auto & WC | 3,240 | - | (3,240) | -100% | | | | #DIV/0! |
| Payroll -Officers | | - | - | | | | | |
| Payroll-admin, PR Tax and fees | | - | - | | | 300 | 300 | |
| Office & Admin Expenses | | - | - | | | (3) | (3) | |
| Rent Expense | 1,120 | - | (1,120) | -100% | | - | - | #DIV/0! |
| Repairs & Maintenance | | - | - | | | - | - | |
| Shop Supplies & Small Tools | 250 | - | (250) | -100% | | - | - | #DIV/0! |
| Telephone and Utilities | | - | - | | | - | - | |
| US Trustee Fees | | - | - | | | - | - | |
| Total Expense | 6,860 | - | | | - | 2,547 | | |
| Net Ordinary Income | (2,780) | - | | | (1,000) | (2,847) | | |

Beg Cash
Net Cash In/(Out)
Ending Cash

Creekside Homes, Inc.
Projection of Cash Receipts and Disbursements
For the 4-week Period ended 11/10/17

| For the week ending: | 10/19/17 thru 11/10/17 | | | |
| --- | --- | --- | --- | --- |
| | Budget | Actual | Variance | As a |
| Revenue | 48,805 | 2,936 | (45,869) | -94% |
| COGS -Labor & Material | 36,000 | 300 | (35,700) | -99% |
| Gross Profit | 12,805 | 2,636 | (10,169) | -79% |
| Expenses | | - | - | |
| Advertising | 2,776 | 1,750 | (1,026) | -37% |
| Auto Expense (Leases and fuel) | 1,100 | - | (1,100) | -100% |
| Bookkeeping | 1,000 | 1,000 | - | 0% |
| Insurance -Liab, Auto & WC | 3,240 | - | (3,240) | -100% |
| Payroll -Officers | - | - | - | |
| Payroll-admin, PR Tax and fees | - | 2,050 | 2,050 | |
| Office & Admin Expenses | 2,175 | 3 | (2,172) | -100% |
| Rent Expense | 1,120 | - | (1,120) | |
| Repairs & Maintenance | 200 | - | (200) | -100% |
| Shop Supplies & Small Tools | 500 | - | (500) | -100% |
| Telephone and Utilities | 1,100 | 371 | (729) | -66% |
| US Trustee Fees | - | - | - | |
| Total Expense | 13,211 | 5,174 | | |
| Net Ordinary Income | (406) | (2,538) | | |

| | |
| --- | --- |
| Beg Cash | 3,934 |
| Net Cash In/(Out) | (2,538) |
| Ending Cash | 1,396 |

Exhibit "C" Page 4 of 4

# Exhibit "D"

Professional Expenses Budget - Creekside Homes, Inc.
Chapter 11

November, 2017

| | |
|---|---|
| Cash collateral | 10 hours (attorney time) |
| §341(a) meeting of creditors | 5 hours (attorney time) |
| U.S. Trustee compliance | 5 hours (paralegal time largely) |
| Business operations | 3 hours (attorney time) |
| Mechanics lien issues | 7 hours(attorney time) |
| Client inquires;<br>keeping client informed | 3 hours (attorney time) |
| Construction contracts; subcontractor<br>contracts; assumptions and rejections | 4 hours (attorney time) |
| Monthly Operating Reports | 2 hours (largely paralegal time) |
| Travel time (one direction) (IDI hearing;<br>also one hearing and one §341(a)) | 10 hours (attorney time) |

Total Hours          49 hours

| | |
|---|---|
| Steven R Fox | 38 hours @ $475/hr |
| Keith Boyd | 6   hours @ $400/hr |
| Paralegal | 5   hours @ $125-150/hr |

Total Charges          $21,200

Major out of pocket expenses:

| | |
|---|---|
| Airfare | $250 to $500 round trip airfare |
| Hotel | $100 to $250 per night |
| Parking | $12 and up |

December, 2017

| | |
|---|---|
| Cash collateral | 2 hours (attorney time) |
| §341(a) meeting of creditors | 0 hours (attorney time) |
| U.S. Trustee compliance | 1 hour (paralegal time largely) |
| Business operations | 2 hours (attorney time) |
| Mechanics lien issues | 4 hours(attorney time) |
| Client inquires;<br>keeping client informed | 1 hour (attorney time) |
| Construction contracts; subcontractor<br>contracts; assumptions and rejections | 8 hours (attorney time) |
| Monthly Operating Reports | 2 hours (largely paralegal time) |
| Travel time (one direction and including<br>travel expenses) (one hearing on lease<br>assumptions/rejection) | 5 hours (attorney time) |

|  |  |
|---|---|
| Total Hours | 25 hours |
| Steven R Fox | 19 hours @ $475/hr |
| Keith Boyd | 3 hours @ $400/hr |
| Paralegal | 3 hours @ $125-150/hr |
| Total Charges | $10,675 |

Major out of pocket expenses:

| | |
|---|---|
| Airfare | $250 to $500 round trip airfare |
| Hotel | $100 to $250 per night |
| Parking | $12 and up |

January, 2018

| | |
|---|---|
| Cash collateral | 4 hours (attorney time) |
| §341(a) meeting of creditors | 0 hours (attorney time) |
| U.S. Trustee compliance | 1 hour (paralegal time largely) |
| Business operations | 2 hours (attorney time) |
| Mechanics lien issues | 2 hours(attorney time) |
| Client inquires; keeping client informed | 1 hour (attorney time) |
| Construction contracts; subcontractor contracts; assumptions and rejections | 3 hours (attorney time) |
| Monthly Operating Reports | 2 hours (largely paralegal time) |
| Adversary proceedings -injunctive relief against Swift and Knight | 10 hours (attorney time) |
| Status Conference | 1 hour (attorney time) |
| Travel time (one direction and including travel expenses) (one cash collateral hrg and one hearing on assumption/rejection) | 10 hours (attorney time) |

|  | Total Hours | 36 hours |
|---|---|---|

| | | |
|---|---|---|
| Steven R Fox | 23 hours @ $475/hr | $10,925 |
| Keith Boyd | 10 hours @ $400/hr | $4,000 |
| Paralegal | 3 hours @ $125-150/hr | $450 |

| | |
|---|---|
| Total Charges | $15,375 |

Major out of pocket expenses:

| | |
|---|---|
| Airfare | $250 to $500 round trip airfare |
| Hotel | $100 to $250 per night |
| Parking | $12 and up |

Exhibit "D" Page 4 of 8

February 2018

| | |
|---|---|
| Cash collateral | 1 hour (attorney time) |
| §341(a) meeting of creditors | 0 hour (attorney time) |
| U.S. Trustee compliance | 1 hour (paralegal time largely) |
| Business operations | 1 hour (attorney time) |
| Mechanics lien issues | 1 hour (attorney time) |
| Client inquires;<br>keeping client informed | 1 hour (attorney time) |
| Construction contracts; subcontractor<br>contracts; assumptions and rejections | 1 hour (attorney time) |
| Disclosure Statement/Plan | 4 hour (attorney time) |
| Monthly Operating Reports | 2 hour (largely paralegal time) |
| Adversary proceedings -injunctive relief<br>against Swift and Knight | 4 hour (attorney time) |
| Status Conference | 1 hour (attorney time) |
| Travel time (one direction and including<br>travel expenses) (hearings in adv.<br>proceedings) | 5 hours (attorney time) |

| | |
|---|---|
| Total Hours | 22 hours |

| | |
|---|---|
| Steven R Fox | 14 hours @ $475/hr |
| Keith Boyd | 5 hours @ $400/hr |
| Paralegal | 3 hours @ $125-150/hr |
| Total Charges | $9,100 |

Major out of pocket expenses:

| | |
|---|---|
| Airfare | $250 to $500 round trip airfare |
| Hotel | $100 to $250 per night |
| Parking | $12 and up |

March 2018

| | |
|---|---|
| Cash collateral | 3 hours (attorney time) |
| §341(a) meeting of creditors | 0 hours (attorney time) |
| U.S. Trustee compliance | 1 hour (paralegal time largely) |
| Business operations | 1 hour (attorney time) |
| Mechanics lien issues | 1 hour(attorney time) |
| Client inquires;<br>keeping client informed | 1 hour (attorney time) |
| Construction contracts; subcontractor<br>contracts; assumptions and rejections | 1 hour (attorney time) |
| Disclosure Statement/Plan | 5 hours (attorney time) |
| Monthly Operating Reports | 2 hours (largely paralegal time) |
| Status Conference | 0 hour (attorney time) |
| Adversary proceedings -injunctive relief<br>against Swift and Knight | 2 hours (attorney time) |
| Travel time (one direction and including<br>travel expenses) | 0 hours (attorney time) |
| Total Hours | 17 hours |

| | | |
|---|---|---|
| Steven R Fox | 10 hours @ $475/hr | $4,750 |
| Keith Boyd | 4  hours @ $400/hr | $1,600 |
| Paralegal | 3  hours @ $125-150/hr | $450 |
| Total Charges | $6,800 | |

Major out of pocket expenses:

| | |
|---|---|
| Airfare | $250 to $500 round trip airfare |
| Hotel | $100 to $250 per night |
| Parking | $12 and up |

April 2018

| | |
|---|---|
| Cash collateral | 1 hour (attorney time) |
| §341(a) meeting of creditors | 0 hours (attorney time) |
| U.S. Trustee compliance | 1 hour (paralegal time largely) |
| Business operations | 1 hour (attorney time) |
| Mechanics lien issues | 0 hours(attorney time) |
| Client inquires;<br>keeping client informed | 1 hour (attorney time) |
| Construction contracts; subcontractor<br>contracts; assumptions and rejections | 1 hour (attorney time) |
| Disclosure Statement/Plan | 5 hours (attorney time) |
| Monthly Operating Reports | 2 hours (largely paralegal time) |
| Status Conference | 0 hour (attorney time) |
| Adversary proceedings -injunctive relief<br>against Swift and Knight | 2 hours (attorney time) |
| Travel time (one direction and including<br>travel expenses) | 0 hours (attorney time) |

|  | | |
|---|---|---|
| Total Hours | | 14 hours |
| Steven R Fox | 9 hours @ $475/hr |
| Keith Boyd | 2 | hours @ $400/hr |
| Paralegal | 3 | hours @ $125-150/hr |

Total Charges        $5,525

Major out of pocket expenses:

| | |
|---|---|
| Airfare | $250 to $500 round trip airfare |
| Hotel | $100 to $250 per night |
| Parking | $12 and up |

May 2018

| | |
|---|---|
| Cash collateral | 1 hour (attorney time) |
| §341(a) meeting of creditors | 0 hours (attorney time) |
| U.S. Trustee compliance | 1 hour (paralegal time largely) |
| Business operations | 1 hour (attorney time) |
| Mechanics lien issues | 1 hour(attorney time) |
| Client inquires;<br>keeping client informed | 1 hour (attorney time) |
| Construction contracts; subcontractor<br>contracts; assumptions and rejections | 1 hour (attorney time) |
| Disclosure Statement/Plan (likely filing<br>this month) | 12 hours (attorney time) |
| Monthly Operating Reports | 2 hours (largely paralegal time) |
| Status Conference | 1 hour (attorney time) |
| Adversary proceedings -injunctive relief<br>against Swift and Knight | 2 hours (attorney time) |
| Travel time (one direction and including<br>travel expenses) | 0 hours (attorney time) |

Total Hours          23 hours
Steven R Fox         15 hours @ $475/hr
Keith Boyd           5   hours @ $400/hr
Paralegal            3   hours @ $125-150/hr

Total Charges        $9,575

Major out of pocket expenses:
Airfare      $250 to $500 round trip airfare
Hotel        $100 to $250 per night
Parking      $12 and up