Below is an Order of the Court.

_TRISH M. BROWN_
TRISH M. BROWN
U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>Creekside Homes, Inc.,<br><br>     Debtor. | Case No. 17-33893-tmb11<br><br>**ORDER CONFIRMING DEBTOR'S MODIFIED PLAN OF REORGANIZATION DATED MAY 31, 2018 AND APPROVING DEBTOR'S DISCLOSURE STATEMENT DATED APRIL 16, 2018 ON A FINAL BASIS** |

This matter came before the court on June 7, 2018, at 10:00 a.m. in the U.S. Bankruptcy Court for the District of Oregon, the Honorable Trish M. Brown, U.S. Bankruptcy Judge, presiding, to consider (1) final approval of the Debtor's Disclosure Statement Dated April 16, 2018, and (2) confirmation of the Debtor's Modified Plan of Reorganization dated May 31, 2018. (The "Plan," a copy of which is attached hereto as **Exhibit D**).

Keith Y. Boyd and Steven R. Fox appeared for the Debtor-in-Possession, James P. Laurick appeared for Swift Financial, LLC f/k/a Swift Financial Corporation ("Swift"), Nicholas

**ORDER CONFIRMING DEBTOR'S MODIFIED PLAN OF REORGANIZATION AND APPROVING DISCLOSURE STATEMENT – Page 1 of 4**

J. Henderson appeared for unsecured creditor Sue Chen, and Howard Levine appeared for creditors Douglas and Elaine LeGrady.

Having considered the pleadings and filings herein, the testimony offered at the hearing and by declaration, the statements of counsel at the hearing, and the resolutions of creditor objections on terms announced on the record at the hearings, the court hereby finds as follows:

A.      The Disclosure Statement contains adequate information.

B.      <u>Satisfaction of §1129(a)'s Requirements</u>.  For the reasons set forth in the Debtor's Plan Memorandum (docket no. 169), the Plan complies with the applicable provisions of §1129(a)(1) through (a)(12).

C.      <u>Notice</u>.  Sufficient, timely, and good notice of the Plan and its terms was provided to creditors.

D.      <u>Modification of Plan</u>.  The proposed modification of the Plan, after acceptance of a plan, does not adversely affect the legal or financial interests of unsecured creditors. The modification consists solely of language contained in the Disclosure Statement.

E.      <u>Knight Capital</u>.  Knight Capital has stated that it does not object to the agreement the Debtor reached with Swift.  (Docket no. 172).

Good cause appearing therefor, it is hereby ORDERED as follows:

1.      <u>Approval of the Disclosure Statement</u>.  The Debtor's Disclosure Statement is approved on a final basis.

2.      <u>Confirmation</u>.  The Debtor's Modified Plan of Reorganization Dated May 31, 2018 (docket no. 163), as modified by this Order, is confirmed. 11 U.S.C. §1129.

**ORDER CONFIRMING DEBTOR'S MODIFIED PLAN OF REORGANIZATION AND APPROVING DISCLOSURE STATEMENT – Page 2 of 4**

3. <u>The Settlement Agreements with Creditors</u>.

a. The terms of the agreement between the Debtor and Sue Chen (attached hereto as **Exhibit C**) are approved. The terms are fair and appropriate.

b. The terms of the agreement between the Debtor and Swift (attached hereto as **Exhibit A**) are approved. The terms are fair and appropriate.

c. The terms of the agreement between the Debtor and Knight Capital (attached hereto as **Exhibit B**) are approved. The terms are fair and appropriate.

4. <u>Debtor's Attorney Fees</u>. Based on the representations of counsel at the hearing, Debtor's counsel have agreed to accept partial payment of allowed pre-confirmation attorney fees, with the remaining balance to be paid over time as outlined in the attached **Exhibit E**. Because such agreement allows the Plan to comply with section 1129(a)(9), and is otherwise fair and appropriate, it is therefore approved.

5. <u>Changing Swift's Rejecting Ballot to Accepting Ballot</u>. Based on the representations made at the hearing, Swift's request to change its ballot from rejecting to accepting is granted and its ballot shall be deemed an accepting ballot.

6. <u>Effective Date of the Plan</u>. The Effective Date of the Plan shall be the first business day that follows the first court day that this Order becomes final.

7. <u>Modification of the Plan</u>. The proposed modifications to the Plan as stated in the attached settlement agreements, are approved. In particular, the modification to treat $20,000 of Swift's claim as secured and the modification to increase payments to members of Class 3 (both evidenced in the revised projections attached hereto as **Exhibit E**) are approved.

**ORDER CONFIRMING DEBTOR'S MODIFIED PLAN OF REORGANIZATION AND APPROVING DISCLOSURE STATEMENT – Page 3 of 4**

8.    <u>Issuance of Injunctions</u>.  The injunction specified at §10.03.8 of the Plan is approved and shall issue.

9.    <u>Discharge Provisions</u>.  Section 9.01 of the Plan is approved.  The Debtor will be discharged of all pre-petition debt as of the date of the entry of an order confirming the Plan except (i) such debt owed to the Secured Creditor in Class 1 (except as modified herein), and (ii) as otherwise provided in this Plan. The Debtor will not be discharged of any debt imposed by this Plan.

###

cc:    Keith Y. Boyd
       Steven R. Fox
       James P. Laurick
       Nicholas J. Henderson
       Howard Levine

**ORDER CONFIRMING DEBTOR'S MODIFIED PLAN OF REORGANIZATION AND APPROVING DISCLOSURE STATEMENT – Page 4 of 4**

# Exhibit "A"

**Settlement Agreement Between Creekside Homes, Inc.
and Swift Financial, LLC f/k/a Swift Financial Corporation**

A.     <u>Statement of Facts</u>.

1.     The Debtor is Creekside Homes, Inc., in <u>In re Creekside Homes, Inc.</u>, chapter 11, case no. 17-33893-tmb11.  It is the Plan Proponent.  (modified Plan docket 166)

2.     Swift Financial, LLC f/k/a Swift Financial Corporation ("Swift") a Class 4 claimant, objected to the Plan (docket no. 164) on various legal and factual grounds.

3.     Andrew and Sarah Burton are the Debtor's principals.

4.     The Debtor and Swift resolved their differences and announced an agreement to the Court at the confirmation hearing on June 7, 2018.

B.     <u>Terms of the Agreement</u>.

1.     <u>Court Approval</u>.  The terms of this Agreement are subject to approval of the Bankruptcy Court.

2.     <u>Stipulation in Adversary Proceeding</u>.  The parties to file a stipulation in <u>Creekside Homes vs. Swift Financial</u>, adv. No. 17-03172, under which Swift will receive $11,500 from the net sales proceeds from the sale of the Burton's duplex unit. The parties to stipulate to release the balance of all monies from the net sales proceeds in the Boyd Law Offices client trust account to the Burtons.

3.     <u>Class 4</u>.  Swift to support the Debtor's Plan as proposed in Class 4 with a distribution of 20%.  Swift to support the proposed temporary injunction.  Swift to request that the Court permit it to change its ballot from rejecting to accepting.

4.     <u>Burton Provisions</u>.  The Burtons will pay $10,000 at 0% interest to Swift on account of its claim and on account of their guaranties.  The payments to be in equal amounts, paid monthly over 36 months, starting at month 2 of the Plan.  Once the Burtons pay the $10,000 to Swift, they will have no further liability to Swift.

5.     The Burtons will execute a deed of trust in their duplex unit located at 210 SW Agee St., McMinnville, OR 97128, in favor of Swift for $20,000.  If the Burtons timely pay $10,000 to Swift, then Swift will release the deed of trust within a reasonable period of time.

6.     Swift is to take no judgment against the Burtons so long as the Burtons execute the deed of trust for $20,000.

Exhibit "A" Page 2 of 3

1

7.   <u>Burton Default Provisions</u>.  The Burtons may default in making payments on the $10,000.  In the event of non-payment, Swift may provide a default notice to the Burtons with the Burtons to receive 3 default notices and opportunity to cure within 15 days of receipt of each notice by email.  Notice to Andrew Burton shall be made to <u>aburton@creeksidehomes.net.</u>

8.   In the event of a 4th default, there shall be no cure opportunity unless Swift agrees. If Swift provides a notice of default and cure is untimely made or if there is a 4th default and Swift does not permit a cure, then Swift may exercise its remedies under Oregon state law to foreclose on the deed of trust for $20,000, less payments the Burtons have made to Swift.

9.   <u>Burton Obligation to be In Rem</u>.  The Burton's obligation to Swift, following the execution and delivery to Swift of the deed of trust shall be <u>in rem</u> and not <u>in personam</u>.  The Burtons shall have no personal liability to Swift.

10.  <u>Swift Secured Claim</u>.  The Debtor will amend its plan to provide that Swift will hold an allowed secured claim against the Debtor for $20,000 payable in equal monthly installments over a 55 month period beginning in year 1, month 5 of the plan at 0% 5% interest.

11.  <u>Allowance of Claim</u>.  Swift's claim to be deemed allowed subject to Swift providing an accounting of the basis for its claim amount.

2

# Exhibit "B"

# Settlement Agreement Between Andrew and Sarah Burton and Knight Capital Funding III, LLC Regarding Plan of Reorganization Proposed by Creekside Homes, Inc.

## A. Statement of Facts.

1. Andrew and Sarah Burton (the "Burtons") are individuals who reside in Oregon.

2. Knight Capital Funding, III, LLLC ("Knight") is a Delaware limited liability company with its principal place of business in Miami-Dade County.

3. Creekside Homes, Inc. is a debtor-in-possession (the "Debtor") in case No. **17-33893-tmb11, District of Oregon.**

4. Knight brought suit in the Circuit Court of the Eleventh Judicial Circuit, In and For Miami-Dade County, Florida, Case No. 17-017291-01, against the Burtons and the Debtor. In its complaint Knight alleged breach of guaranty claims against the Burtons.

5. Knight obtained a "Default Final Judgment for Plaintiff" ("Final Judgment") against the Burtons, on or about October 20, 2017, in the amount of $109,746.42 Since that date, Knight has not sought to domesticate and/or to record a judgment lien against the Burton's assets.

6. Creekside has proposed a plan of reorganization in its chapter 11 case and, in that plan, proposes to pay a distribution of monies over time to Knight.

7. Knight and the Burtons have discussed Knight's claims against the Burtons and Knight's willingness to forbear collection efforts and to accept a discounted payment from the Burtons. Following the exchange of proposals, the Burtons and Knight reached an agreement which is described below.

8. In entering into this Agreement, both Knight and the Burtons acknowledge the exchange of consideration (or value) between them.

## B. The Settlement Agreement.

1. Beginning with month 1 of the Debtor's proposed plan, the Burtons shall pay to Knight $150 per month and shall do so each month for a period of sixty (60) months. The Burtons shall pay all payments required by this Agreement to an address that Knight specifies in a writing to the Burtons.

1

Doc ID: 7dca0882626460ca5aa8e3789c8554ba2f7ae954

2. When the Debtor is obligated to make payments in the 30th month of its proposed plan, then the Burtons, in the same 30th month, shall be obligated to pay to Knight the sum of $4,500 plus the regular payment of $150. In month 30, the Burtons shall be obligated to pay $4,650 in total to Knight.

3. When the Debtor is obligated to make payments in the 60th month of its proposed plan, then the Burtons, in the same 60th month, shall be obligated to pay to Knight the sum of $4,500 plus the regular payment of $150. In month 36, the Burtons shall be obligated to pay $4,650 in total to Knight.

4. The Burtons guaranty the Debtor's payment obligations under the Plan.

5. In consideration of the value the Burtons offer in this Agreement, Knight shall cast a timely ballot accepting the Debtor's plan. The ballot may be cast by email to srfox@foxlaw.com or by telecopier to (818) 774-3707.

6. Knight shall prepare a brief statement for the Debtor to file with the Court. In such statement, Knight shall express its support for the Debtor's proposed plan and its terms.

7. Upon the completion of the Burton's payment obligations to Knight as specified above and upon the completion of the Debtor's payment obligations in the proposed plan to Knight, Knight shall record a statement in the proper form with the Circuit Court of the Eleventh Judicial Circuit, In and For Miami-Dade County, Florida, Case No. 17-017291-01, indicating that the Burtons have satisfied the judgment in full.

8. The Burtons shall be in default of this Agreement if they fail to remit any portion of the payments due herein, as outlined in paragraphs B(1) through B(3) outlined above. Knight shall provide the Burtons written notice of such default at the email address(es) provided in the signature block below. If payment is not rendered within ten (10) days of such written notice of non-payment or if another arrangement is not reached by the parties, then the full amount of the judgment shall be due and payable to Knight (less any payments made pursuant to this Agreement), subject to the temporary injunction of the Bankruptcy Court, as further explained in the Plan of Reorganization.

## C. GENERAL TERMS AND PROVISIONS

1. Except as specified here, no promise or inducement has been offered or made for this Agreement.

2. No party here is relying on any statement or any representation not contained in this Agreement.

2

Doc ID: 7dca0882626460ca5aa8e3789c8554ba2f7ae954

3. This Agreement reflects the entire agreement among the parties.

4. The promises contained herein will be binding on the parties, their representatives, successors and assigns of each of the parties, and their attorneys.

5. The parties represent that in connection with the Agreement, they have had the advice of counsel or have had the opportunity to do so, and the parties are aware of the effect, significance and consequence of this Agreement. The Burtons have not had the advice of counsel with respect to this Agreement.

6. The parties are entering into this Agreement freely, without force, duress or undue influence.

7. Each party agrees to execute all such documents as may be reasonable, necessary, appropriate and/or helpful to carry out the provisions of this Agreement.

8. To provide for the enforcement of this Agreement, the parties reserve to themselves the right to initiate and to pursue any legal action necessary to enforce the terms of this Agreement. In the event of such legal action, the prevailing party shall be entitled to recover actual costs and reasonable attorney's fees incurred.

9. Any notice required under this Agreement from one party to another shall be given by telecopier, electronic transmission, or by overnight mail to the parties and to their counsel, if any.

10. This Agreement may be signed in separate counterparts by the parties, each of which is an original, but all of which together shall be one document, including facsimile signatures, when one counterpart has been executed by each of the parties.

11. This Agreement is the final, complete, exclusive and entire agreement of the parties. It supersedes any and all prior or contemporaneous written or oral agreements by, between, and/or among them. There are no representations, warranties, agreements, arrangements or understandings (oral or written), by, between and/or among the parties, related to or connected with the subject matter contained in this agreement, other than those which are stated here.

12. The Agreement is an accord and satisfaction of a disputed matter. No admission of liability is made by either party.

13. All parties have cooperated and agreed on the Agreement's drafting and preparation. If there is a dispute concerning its terms, the Agreement shall be interpreted according to its plain and clear meaning and shall not be interpreted for or against any party on the ground that any such party drafted, or caused to be drafted, the Agreement or any part thereof.

3

Doc ID: 7dca0882626460ca5aa8e3789c8554ba2f7ae954

14.   This Agreement is for the benefit of the parties hereto, their present or future assignees and their successors.

16. This Agreement shall be construed according to the laws of the State of Florida.

IN WITNESS WHEREOF, the Parties have executed this Agreement on the date indicated below.                05/30/2018

Knight Capital Funding, III, LLLC

_____                Dated: May 30, 2018

Amanda L. Barton, *In-House Counsel*

Email address:   Legal@knightcapitalfunding.com

amanda@knightcapitalfunding.com


Sarah Burton

_____                Dated: May30__, 2018

Email address:   sburton2006@gmail.com


Andrew Burton

_____                Dated: May30__, 2018

Email address:   aburton@creeksidehomes.net


4

Exhibit "B" Page 5 of 5

Doc ID: 7dca0882626460ca5aa8e3789c8554ba2f7ae954

# Exhibit "C"

## Settlement Agreement Between Creekside Homes, Inc. and Sue Chen

A.    <u>Statement of Facts</u>.

1.    The Debtor is Creekside Homes, Inc., in <u>In re Creekside Homes, Inc.</u>, chapter 11, case no. 17-33893-tmb11.  It is the Plan Proponent.  (Modified Plan docket 166)

2.    Sue Chen, a claimant in Class 3, objected to the Debtor's Plan. (Docket no. 165)

3.    The Plan proposed payment of a 10% dividend over 5 years to Class 3 members.

4.    The Debtor and Chen resolved their differences and announced an agreement to the Court at the confirmation hearing on June 7, 2018.

B.    <u>Terms of the Agreement</u>.

1.    The terms of this Agreement are subject to approval of the Bankruptcy Court.

2.    The treatment of Class 3 shall be modified as follows:

      a.    Class 3 shall receive a distribution of 15% payable over 6 years.

      b.    In addition to the dividend provided for in the plan, the Debtor shall pay an additional $13,732 in equal monthly installments of $572 to members of Class 3 in years 3 and 4 which will amount to an additional 2% payment to Class 3 members.

      c.    In addition to the dividend provided for in the plan, the Debtor shall pay an additional $37,760 in equal monthly installments of $572 in year 5 and $2,574.33 in year 6 to members of Class 3 in years 5 and 6 which will amount to an additional 3% payment to Class 3 members.

# Exhibit "D"

**THE FOX LAW CORPORATION**
Steven R. Fox, California SBN 138808
17835 Ventura Blvd., Suite 306
Encino, CA 91316
(818) 774-3545; FAX (818) 774-3707
srfox@foxlaw.com

**THE LAW OFFICES OF KEITH Y. BOYD**
Keith Y. Boyd, OSB #760701
keith@boydlegal.net
724 S. Central Ave., Suite 106
Medford, OR 97501
(541) 973-2422; FAX (541) 973-2426

     Of Attorneys for Debtor in Possession

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>Creekside Homes, Inc.,<br><br>          Debtor. | Case No. 17-33893-tmb11<br><br>DEBTOR'S MODIFIED PLAN OF REORGANIZATION DATED MAY 31, 2018 |

ARTICLE I

<u>SUMMARY</u>

     This Modified Plan of Reorganization (the "Plan") under Chapter 11 of the

Bankruptcy Code proposes to treat the claims of creditors of Creekside Homes,

Inc. (the "Debtor") as outlined below.  The Plan assumes that the Reorganized

Debtor will pay its sole secured creditor in full, pay its priority taxes in full, pay its

general unsecured creditors approximately 10% of their allowed claims and to pay

its general unsecured creditors also holding claims against the Debtor's officers

DEBTOR'S MODIFIED PLAN OF REORGANIZATION DATED MAY 31, 2018 - **Page
1 of 24**

and directors approximately 20% of their allowed claims.

All Allowed Administrative Claims will be paid in full on the Effective Date of Plan or at such other times and in such other amounts as is agreed with the Reorganized Debtor. The sole Secured Claim will be paid in full according to the terms of its contract, as modified herein.

This Plan provides for one class of secured claim, three classes of general unsecured claims not entitled to priority treatment (administrative convenience class, general unsecured and general unsecured with claims against third parties), and one class of equity security holders. The Class 1 Creditor holding an Allowed Secured Claim will receive distributions. The Class 2 to 4 Creditors holding Allowed Unsecured Claims will receive distributions. The Class 5 Interest Holders will retain their Interests in the Debtor.

All Creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.

> NOTE: The Plan seeks the imposition of a temporary injunction during the time in which plan payments are being made. This injunction may affect your rights.

> NOTE: The Plan proposes that the lien of Swift Funding and any lien which may be asserted by Knight Capital and LoanMe are unsecured by virtue of the facts of the value of the Debtor's personal property

and that Funding Circle's senior lien attaches to all of the value of the Debtor's personal property.  L.B.R. 3016-1.  The Plan contains a provision requiring the release of any lien asserting a security interest in the Debtor's assets by Swift.

Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one.  (If you do not have an attorney, you may wish to consult one.)

Debtor hereby proposes the following Plan of Reorganization.

ARTICLE II

CLASSIFICATION OF CLAIMS AND INTERESTS

All Allowed Claims and Interests are placed in the following classes:

2.01   Class 1 will consist of the Allowed Secured Claim of Funding Circle secured by the assets of the Debtor.

2.02   Class 2 will consist of General Unsecured Creditors with claims of $500 or less or those creditors reducing claims to $500 or less (the Administrative Convenience Class).

2.03   Class 3 will consist of General Unsecured Creditors not entitled to priority.

2.04   Class 4 will consist of General Unsecured Creditors not entitled to priority and who holds claims against officers and directors of the Debtor in addition to holding claims against the Debtor.

2.05   Class 5 will consist of the holders of Interests in the Debtor.

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS

## AND PRIORITY TAX CLAIMS

**3.01** Each holder of an Allowed Claim entitled to administrative expense priority pursuant to 11 U.S.C. § 507(a)(2) or (3) will receive cash in the amount of such Claim on the latest of (a) the Effective Date of Plan; (b) the date on which the Claim is due and payable (in accordance with the terms of payment of such Claim); (c) the first business day after the date that any Claim requiring court approval is allowed and the effect of such order is not stayed; or (d) such later date to which the holder of an Allowed Claim entitled to administrative expense priority agrees. To the extent that an Administrative Claim representing an allowance of compensation or reimbursement of expenses by a Final Order pursuant to 11 U.S.C. § 503(b)(2), 503(b)(3), or 503(b)(4) is not paid in full within 30 days after the Effective Date of Plan, whether or not allowed by Final Order prior to that date, the unpaid portion of such Administrative Claim will bear interest at the rate of 1% per month from the Effective Date of Plan until paid in full.

Pursuant to the Settlement Agreement between Douglas and Elaine LeGrady and the Debtor (docket no. 124, Exhibit A) and thereafter approved by the Court (docket no. 142), the LeGradys hold an administrative claim for $7,500. Pursuant to the Settlement Agreement the claim is to be paid at $1,000 monthly with the final payment in the amount of $1,500. The attached projections provide for this claim. There is an error in the Settlement Agreement, the timing of the payment of

DEBTOR'S MODIFIED PLAN OF REORGANIZATION DATED MAY 31, 2018 - **Page 4 of 24**

Exhibit "D" Page 5 of 25

the administrative claim.  The treatment in the Plan, with agreement of the LeGradys, corrects that error.

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Bankruptcy Code.  Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim in regular installments paid over a period not exceeding five (5) years from the order of relief.  The schedule of these payments is referenced in Exhibit C to the Disclosure Statement.  The IRS and Department of Consumer & Business Services hold priority claims and will be paid interest at 10%.

If the Debtor fails to make any payment of any tax, or any plan payments to the Internal Revenue Service within 10 days of the due date, including accruing employment tax deposits, or if the debtor fails to file a Federal tax return by the due date, then the United States may declare that the debtor is in default of the plan.

Declaration of the default is to be mailed, in writing to the debtor/debtor's Counsel. The debtor shall be given 30 days to cure the default by paying all past due amounts, and filing/paying all past due tax returns to:

Internal Revenue Service
Attn: Insolvency Department
1220 SW Third Ave
M/S O240
Portland, OR 97204-2871

If full payment is not made within 30 days of such demand, then the Internal Revenue Service may collect the entire liability and the automatic stay of 11 U.S.C. §362(a) is lifted so that IRS may collect all unpaid liabilities through administrative

DEBTOR'S MODIFIED PLAN OF REORGANIZATION DATED MAY 31, 2018 - **Page 5 of 24**

collection provisions of the Internal Revenue Code.

## ARTICLE IV

### TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

**4.01** The Allowed Secured Claim is placed in a separate class or sub-class. Except as specifically provided below, all terms and conditions set forth in the agreements and instruments under which the Allowed Secured Claim arose shall be and remain in full force and effect according to the terms, and the holder thereof shall retain its liens on the property securing such claims with the same priorities such lien had when the petition commencing this case was filed.

**4.02** <u>CLASS 1</u> - Allowed Secured Claim of Funding Circle. The Class 1 creditor will retain its lien on its collateral and will be paid in full, with interest at 5% (simple), as follows:

Payments in the contract amount will begin on Month 4 following the Effective Date of Plan, at the rate of $1,550 monthly, and shall continue at the contract payment amount on the same day of each month thereafter. Any delinquent payments will be paid by continuing the monthly contract payments after the original maturity date, which will be extended for the time necessary to pay this claim in full.

**4.03** <u>CLASS 2</u> - General Unsecured Creditors with claims of $500 or less or those creditors electing to reduce their claims to $500 (the "Administrative Convenience Class"). In order to reduce a Claim to become part of this Class, a Creditor must indicate its intention on the Ballot accompanying the Plan and Disclosure Statement or may indicate such intention at any time up to the Effective

Date of the Plan.

The Class 2 Claimants will be paid 33% of their Claims 30 days after the Effective Date of Plan.

**4.04** <u>CLASS 3</u> - General Unsecured Creditors not entitled to priority.

The Reorganized Debtor will pay to each holder of an Allowed Class 3 Claim, in cash, such holder's pro rata share of $74,101, which shall be paid by the Reorganized Debtor within five (5) years after the Effective Date of Plan. Payments will be made by the Reorganized Debtor monthly. The first monthly payment will be due on Month 10 following the Effective Date of Plan. Subsequent payments will be due on the same date of each month thereafter with the final payment due no later than the fifth anniversary of the Effective Date of Plan.

Annual Payments will be no less than the following:

| | |
|---|---|
| Year 1: | $4,359 |
| Year 2: | $17,435 |
| Year 3: | $17,435 |
| Year 4: | $17,435 |
| Year 5: | $17,439 |

Class 3 Claimants will receive approximately 10% of their Claims. Class 3 Claims bear no interest.

**4.05** <u>CLASS 4</u> - General Unsecured Creditors not entitled to priority and holding guaranties of third parties, the Debtor's principals and officers.

The Reorganized Debtor will pay to each holder of an Allowed Class 4 Claim, in cash, such holder's pro rata share of $57,758, which shall be paid by the Reorganized Debtor within five (5) years after the Effective Date of Plan.

DEBTOR'S MODIFIED PLAN OF REORGANIZATION DATED MAY 31, 2018 - **Page 7 of 24**

Payments will be made by the Reorganized Debtor monthly.  The first monthly payment will be due on Month 10 following the Effective Date of Plan.  Subsequent payments will be due on the same date of each month thereafter with the final payment due no later than the fifth anniversary of the Effective Date of Plan. Holders of claims in this Class shall be subject to the Injunction found at §10.03.8 of the Plan.

Annual Payments will be no less than the following:

| | |
|---|---|
| Year 1: | $3,398 |
| Year 2: | $13,590 |
| Year 3: | $13,590 |
| Year 4: | $13,590 |
| Year 5: | $13,590 |

Class 4 Claimants will receive approximately 20% of their Claims.  Class 4 Claims bear no interest. [1]

**4.06  CLASS 5** - Interests in the Debtor.  The Class 5 Interest Holders will retain their Interest in the Debtor.

**4.09  IMPAIRED CLASSES.**  Classes 1 to 4 are impaired.  Class 5 is not impaired.

ARTICLE V

ALLOWANCE AND DISALLOWANCE OF CLAIMS

**5.01  Disputed Claim**.  A Disputed Claim means a Claim against the

---

[1]See paragraph 5.06 below for a specific provision dealing with the unsecured claim of Swift Funding.

DEBTOR'S MODIFIED PLAN OF REORGANIZATION DATED MAY 31, 2018 - **Page 8 of 24**

Debtor, to the extent that a proof of Claim has been timely Filed or deemed timely Filed under applicable law, as to which an objection has been or may be timely Filed by the Debtor, or any other party in interest, and which objection, if timely Filed, has not been withdrawn on or before any date fixed for filing such objections by the Plan or order of the Bankruptcy Court, and has not been denied by a Final Order.  To the extent an objection relates to the allowance of only a part of a Claim, such Claim will be a Disputed Claim only to the extent of the objection.  Before an objection has been or may be timely Filed, for the purposes of this Plan, a Claim will be considered a Disputed Claim to the extent that the amount of the Claim specified in the proof of Claim exceeds the amount of the Claim scheduled by the DIP as other than disputed, contingent, or unliquidated.

  **5.02** <u>Distributions Relating to Disputed Claims</u>. When determining a *Pro rata* share of any Claim holder of the cash to be distributed pursuant to the Plan, the Reorganized Debtor shall assume that each Disputed Claim as of the Effective Date of Plan is an Allowed Claim as of the Effective Date of Plan in an amount equal to the lesser of (a) the maximum amount possible in respect of such Disputed Claim and (b) the amount estimated by the Bankruptcy Court in respect of such Claim upon request by the Reorganized Debtor.  The amount of cash not distributed as a result of the preceding sentence shall be placed in reserves for the benefit of holders of such Disputed Claims.

  The amount placed in reserves for the benefit of holders of such Disputed Claims shall be held in separate interest-bearing attorney trust accounts (not IOLTA accounts), one for each Disputed Claim, maintained by The Fox Law Corporation, Inc.  Interest generated on such accounts shall be held in the

DEBTOR'S MODIFIED PLAN OF REORGANIZATION DATED MAY 31, 2018 - **Page 9 of 24**

account, pending distribution as outlined below.

At such time as all or any portion of a Disputed Claim becomes an Allowed Claim, the distributions reserved for such Disputed Claim or such portion, together with the actual interest earned on account of such funds shall be released from the appropriate Distribution Reserve Account and delivered to the holder of such Allowed Claim within 30 days. In no event shall a Disputed Claim, which becomes an Allowed Claim, receive a distribution in excess of the amount originally reserved for such Claim. At such time as all or any portion of any Disputed Claim is determined not to be an Allowed Claim, the distribution reserved for such Disputed Claim or such portion, plus any earnings therein, shall be released from the appropriate Distribution Reserve Account and distributed to all other creditors of the same class within 30 days.

**5.03 Resolution of Disputed Claims.** No distribution or payment shall be made on account of a Disputed Claim until such Disputed Claim becomes an Allowed Claim. Unless otherwise ordered by the Bankruptcy Court, after the Effective Date of Plan, the Reorganized Debtor shall have the non-exclusive right to make and file objections to Claims, except that as to applications for allowances of compensation and reimbursement of expenses under §§330 and 503 of the Bankruptcy Code, objections may be made in accordance with applicable Bankruptcy Rules by parties in interest. The Reorganized Debtor shall file and serve a copy of each objection upon the holder of the Claim to which an objection is made as soon as practicable, but in no event later than (i) ninety days after the Effective Date of Plan, or (ii) such later time as may be fixed or extended by order

DEBTOR'S MODIFIED PLAN OF REORGANIZATION DATED MAY 31, 2018 - **Page 10 of 24**

of the Bankruptcy court.

**5.04   Bar Date for Fee Claims.**   Unless otherwise ordered by the Bankruptcy Court, all fee applications for final allowance of compensation and reimbursement of expenses, through and including the Confirmation Date, shall be filed within 30 days after the final confirmation hearing.   Any party seeking compensation or reimbursement in respect of a Fee Claim shall give the DIP written notice of the estimated amount of such Fee Claim on or before ten days prior to the final confirmation hearing.   All such Fee Claims for which application is not timely filed shall be forever barred.   Objections to such fee applications may be filed on or before 60 days after the Confirmation Date.   The Bankruptcy Court shall retain jurisdiction to determine all such Fee Claims.

**5.05**   Notwithstanding the foregoing, for reasonable services rendered after the Confirmation Date, the Reorganized Debtor shall promptly pay any professional person retained by it, upon submission of proper written invoices detailing the reasonable services rendered and expenses incurred for which compensation or reimbursement is sought.

**5.06**   Swift Funding shall release its financing statement within 30 days following the Effective Date of Plan.   If Swift has taken an appeal from the Order confirming the Plan challenging the requirement under the Plan to release its financing statement, unless Swift obtains an order on appeal reversing this obligation, then Swift shall release its financing statement not later than 30 days after the order confirming the Plan becomes a Final Order.

///

DEBTOR'S MODIFIED PLAN OF REORGANIZATION DATED MAY 31, 2018 - **Page 11 of 24**

ARTICLE VI

<u>PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

**6.01** The Debtor assumes the following executory contracts and/or unexpired leases effective upon the Effective Date of Plan as provided in Article VIII.

**6.01.1.** Lease of Office from the Turner Family Trust

**6.01.2.** Lease of Storage Space (month to month) from Valley Storage

**6.01.3.** Computer software program (for estimating) from Buildertrend Solutions, Inc.

**6.02** Unless otherwise agreed by the parties to an assumed contract or lease, any defaults will be cured on the Effective Date of Plan.

**6.03** All executory contracts and leases not otherwise assumed are deemed rejected as of the Effective Date of Plan.

ARTICLE VII

<u>MEANS FOR IMPLEMENTATION OF THE PLAN</u>

**7.01** The Reorganized Debtor proposes to continue the operation of its business in order to pay Claims as set forth in the Plan.

**7.02** The Reorganized Debtor, creditors, and Interest Holders will take all actions and execute whatever documents are necessary and appropriate to effectuate the terms of the Plan.

*///*

*///*

DEBTOR'S MODIFIED PLAN OF REORGANIZATION DATED MAY 31, 2018 - **Page 12 of 24**

**8.01** <u>Definitions and Rules of Construction.</u> The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions:

**8.02** <u>Administrative Claim</u> means all costs and expenses of administration allowed under 11 U.S.C. § 503(b), including, without limitation, the actual and necessary costs and expenses of preserving the estate of the DIP and operating the business of the DIP, all allowances of compensation or reimbursement of expenses allowed by Final Order, and any fees or charges assessed against the estate pursuant to 28 U.S.C. § 1930.

**8.03** <u>Allowed Claim</u> means a Claim:

**8.03.1** That appears on the schedules and list of creditors prepared and Filed with the Bankruptcy Court and is not listed as disputed, contingent, unliquidated, or unknown as to amount; or

**8.03.2** With respect to which a proof of Claim has been timely Filed, and,

**8.03.2.1** Either is not a Disputed Claim (but only to the extent that such Claim is not a Disputed Claim); or

**8.03.2.2** Which has been allowed (and only to the extent allowed) by a Final Order; but

**8.03.3** No Claim will be considered an Allowed Claim if an objection to the allowance thereof is interposed at any time and such objection has

not been denied by Final Order.

8.04   _Allowed Secured Claim_ means an Allowed Claim secured by a lien, security interest or other charge against or interest in Collateral, or that is subject to setoff under § 553 of the Bankruptcy Code, to the extent of the value of the interest of the holder of such Allowed Claim in the Debtor's interest in such property, or to the extent of the amount subject to setoff, as the case may be.

8.05   _Bankruptcy Code_ means Title 11 of the United States Code, as applicable to this case, as now in effect or hereafter amended.

8.06   _Bankruptcy Court or Court_ means the United States District Court for the District of Oregon having jurisdiction over this case, to the extent of any reference made pursuant to Title 28, United States Code, § 157, the United States Bankruptcy Court for the District of Oregon, or any court having competent jurisdiction to enter the Confirmation Order.

8.07   _Bankruptcy Rules_ means the Federal Rules of Bankruptcy Procedure, as amended, and the local rules of the Bankruptcy Court as applicable to this case.

8.08   _Case_ means _In re Creekside Homes, Inc._; Bankruptcy Case No 17-33893-tmb11.

8.09   _Claim_ has the meaning defined in Section 101(5) of the Bankruptcy Code.

8.10   _Collateral_ means any property in which the Debtor's interest is pledged to secure an Allowed Secured Claim.  With respect to the Class 1 Allowed Secured Claim, Collateral means the Property.

DEBTOR'S MODIFIED PLAN OF REORGANIZATION DATED MAY 31, 2018 - **Page 14 of 24**

8.11 <u>Confirmation</u> means the signing of the Confirmation Order by the Bankruptcy Court.

8.12 <u>Confirmation Date</u> means the date on which the Confirmation Order is docketed.

8.13 <u>Confirmation Order</u> means the order of the Bankruptcy Court confirming the Plan.

8.14 <u>Effective Date of Plan</u> means that date that the Confirmation Order becomes a Final Order.

8.15 <u>Fee Claim</u> means a Claim of the kind specified in Bankruptcy Code § 507(a)(2) relating to professional persons.

8.16 <u>Filed</u> means filed with the Bankruptcy Court in this case.

8.17 <u>Final Order</u> means an order which is subject to no further appeals, review or certiorari, either because such order is not appealed or because all possible appeals are either withdrawn, dismissed, or result in affirmance of the order.

8.18 <u>Interest</u> means an equity interest in the Debtor.

8.19 <u>Interest Holder(s)</u> means the holder(s) of an equity Interest in the Debtor, including, without limitation, any successors or assigns of any holder of an equity Interest.  As of the date of the Plan, the entities who are the current holders of Interests are: Andrew Burton and Sarah Burton.

8.20 <u>Net Proceeds</u> means sale proceeds after payment of commissions and expenses, and payment of allowed secured Claims secured by an asset that is sold.

8.21 <u>Petition Date</u> means the date of the Filing of the petition herein.

**8.22** Plan means this Plan of Reorganization in its present form or as it may be modified, amended, or supplemented.

**8.23** Priority Claims means unsecured Claims with the priorities set forth in § 507(a).

**8.24** Reorganized Debtor means the Debtor after Confirmation of the Plan.

**8.25** Secured Creditor means a holder of an Allowed Secured Claim as to the amount of such Allowed Secured Claim.

**8.26** Tax Claim means a Claim of the kind specified in Bankruptcy Code § 507(a)(8).

**8.27** Undefined Terms Any term used in this Plan that is not herein defined but is used in the Bankruptcy Code will have the meaning assigned to the term in the Bankruptcy Code.

**8.28** Unsecured Creditor means a creditor of the Debtor holding an Allowed Claim which is not an Allowed Secured Claim.

**8.29** Additional Provisions

**8.29.1** Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

**8.29.2** Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**8.29.3** Word and Phrases. In addition to the words and phrases defined in the Bankruptcy Code, words and phrases in this Plan will have the

Exhibit "D" Page 17 of 25

meanings set forth throughout the Plan and defined in Article VIII of the Plan. Defined words and phrases will generally be signified by the capitalization of the first letter of each of the words in the defined term.

8.29.4 <u>Controlling Effect</u>. Unless a rule of law or procedure is supplied by federal law including the Bankruptcy Code or the Bankruptcy Rules, the laws of the State of Oregon govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.29.5 <u>Corporate Governance</u>. The Plan shall comply with the requirements of §1123(a)(6) of the Bankruptcy Code.

## ARTICLE IX

## <u>DISCHARGE OF DEBTOR</u>

9.01 <u>Discharge</u>. The Debtor will be discharged of all pre-petition debt as of the date of the entry of an order confirming the Plan except (i) such debt owed to the Secured Creditor in Class 1 (except as modified herein), and (ii) as otherwise

provided in this Plan. The Debtor will not be discharged of any debt imposed by this Plan.

## ARTICLE X

## <u>OTHER PROVISIONS</u>

10.01 <u>Jurisdiction of the Court</u>. Nothing in this Section 10.01 shall be construed to constitute a grant of exclusive jurisdiction to the Bankruptcy Court. Notwithstanding the entry of the Confirmation Order or the Effective Date of Plan

DEBTOR'S MODIFIED PLAN OF REORGANIZATION DATED MAY 31, 2018 - **Page 17 of 24**

having occurred, the Bankruptcy Court will retain jurisdiction of the Chapter 11 Case for the following purposes:

10.01.1     To hear and determine any and all pending applications for the rejection, assumption, or assignment of any Executory Contract, any objection to any Claim resulting therefrom, and the allowance, reduction, expungement, or compromise of any Claim resulting thereof;

10.01.2     To hear and determine any motion, application, adversary proceeding, contested matter, and other litigated matter pending on or after the Confirmation Date or regarding the property of the estate of the Debtor;

10.01.3     To ensure that the distribution to holders of Claims is accomplished as provided in this Plan;

10.01.4     To hear and determine any objection to any Claim filed, either before or after the Confirmation Date; to allow or disallow, in whole or in part, any Disputed Claim; and to hear and determine any other issue presented hereby or arising hereunder, including any contested matter or adversary proceeding pending on or after the Confirmation Date;

10.01.5     To enter, implement, or enforce such orders as may be appropriate in the event Confirmation is for any reason stayed, reversed, revoked, modified, or vacated;

10.01.6     To hear and determine all applications for compensation of professional persons and reimbursement of expenses under §§ 330 or 331 of the Bankruptcy Code;

10.01.7     To hear any application to modify this Plan in

DEBTOR'S MODIFIED PLAN OF REORGANIZATION DATED MAY 31, 2018 - **Page 18 of 24**

accordance with § 1127 of the Bankruptcy Code, and remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary to carry out the purposes and effects thereof;

10.01.8    To hear and determine disputes arising in connection with this Plan, or the implementation of the foregoing, including, without limitation, disputes between the Reorganized Debtor and holders of Claims and arising under agreements, documents, or instruments executed in connection with this Plan;

10.01.9    To construe, to take any action and issue such orders, prior to and following the Confirmation Date, as may be necessary for the enforcement, implementation, execution, and consummation of this Plan or for the maintenance of the integrity of this Plan following consummation;

10.01.10    To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

10.01.11    To hold any hearings or preside over any contested matters or adversary proceedings concerning the priority of payment as between any holders of Claims against the Debtor;

10.01.12    To hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes and tax benefits, and similar or related matters, with respect to the Debtor or the estate arising prior to or relating to periods or events prior to the Effective Date of Plan or relating to the period of administration of the Chapter 11 Case;

10.01.13    To hear and determine any other matters related hereto
and not inconsistent with Chapter 11 of the Bankruptcy Code; and

10.01.14    To enter a final decree closing the Chapter 11 Case.

**10.02 <u>Effect of Confirmation</u>.**  The effect of Confirmation shall be that
provided for in 11 U.S.C. § 1141.  As soon as practicable after the Effective Date
of Plan, the Reorganized Debtor shall seek authority from the Court to close the
Chapter 11 case in accordance with the Bankruptcy Code and the Bankruptcy
Rules.  Entry of a final decree closing the Chapter 11 case shall, whether or not
specified therein, be without prejudice to the right of the Reorganized Debtor or
other party in interest to reopen the Chapter 11 case for any matter over which the
Court has retained jurisdiction under this Plan.

**10.03 <u>Miscellaneous</u>.**

10.03.1    With leave of the Bankruptcy Court, the Debtor may
propose modifications of this Plan at any time before Confirmation, upon notice to
the 20 largest unsecured creditors, the office of the United States Trustee, and such
other interested parties as the court may direct.

10.03.2    If this Plan satisfies the requirements of all provisions of 11
U.S.C. § 1129(a) except § 1129(a)(8), the Debtor hereby requests Confirmation of
this Plan pursuant to § 1129(b).

10.03.3    Any and all causes of action which the DIP may currently
have (known or unknown), or which may subsequently arise under any of the
provisions of the Bankruptcy Code, and other law, or any statute, will be preserved
for the benefit of the Reorganized Debtor and this Court will retain jurisdiction to

dispose of such causes of action. All such causes of action will vest in the Reorganized Debtor upon Confirmation. The DIP does not believe that any avoidance claims exist.

> **10.03.4** This Plan will be substantially consummated when the Reorganized Debtor makes all of the Plan payments due on the Effective Date of Plan.

> **10.03.5** The Reorganized Debtor shall be responsible for timely payment of fees incurred pursuant to 28 USC § 1930(a)(6) until the case is closed, converted, or dismissed. After Confirmation, the Reorganized Debtor shall file with the US Trustee a quarterly financial report for each month, or portion thereof, that the case remains open. The monthly or quarterly financial report shall include a statement of all disbursements made during the course of the month or quarter, whether or not pursuant to the Plan.

> **10.03.6** The Reorganized Debtor's failure to comply with the terms of this Plan shall be an event of default.

> **10.03.7** Holders of Claims shall, upon default, have the remedies provided to them in the documents underlying their Claims and, at law, and if applicable, security interests; including the remedies set forth in this Plan and the Loan Documents.

> **10.03.8 Post-Discharge Temporary Injunction For Equity Holders and Officers, Directors and Shareholders.** The order confirming the plan (or as amended) shall act as a temporary injunction during the Plan term restraining any creditor, party-in-interest or any third party from pursuing any officer, director,

DEBTOR'S MODIFIED PLAN OF REORGANIZATION DATED MAY 31, 2018 - **Page 21 of 24**

shareholder or managing person of the Debtor on account of any claim based on a guaranty. The claims within the scope of this injunction would be those claims which arose prepetition. In other words, claims against the Debtor which do not arise prepetition but arise during the chapter 11 case or thereafter are not within the scope of this proposed injunction.

Upon confirmation of the Plan, all creditors of Debtor having an Allowed Claim shall be temporarily enjoined, pursuant to 11 U.S.C. §105, from proceeding against any officer, director, shareholder, employee, or other responsible person of Debtor, individually, or in their official capacities, for the collection of all or any portion of their Allowed Claims. This temporary injunction will remain in effect during the Plan term. Should the Debtor be in violation of payment terms of the Plan and should that violation remains uncured for a period of 60 days after receipt by the Debtor of written notice from any party directly affected by such violation, the affected party may apply to the Bankruptcy Court for an order to dissolve the temporary injunction but only as to the affected party. The Bankruptcy Court shall have exclusive jurisdiction to extinguish or modify the temporary injunction. The Debtor retains the right to file a motion for continuation of the injunction if it can show that there was no default.

To the extent they may have any liability, officers, guarantors, and directors shall <u>not</u> be discharged or released from any liability for such claims and debts under the Plan, however, absent further order of the Court, the exclusive remedy for payment of any claim or debt so long as the plan is not in default as described above shall be payment through the Plan. The temporary injunction is

DEBTOR'S MODIFIED PLAN OF REORGANIZATION DATED MAY 31, 2018 - **Page 22 of 24**

Exhibit "D" Page 23 of 25

not meant to discharge any third party's liabilities. When payments under the Plan conclude, the temporary injunction will no longer bar creditors from pursuing parties protected by the temporary injunction.

The injunction applies to the individual person and also to their assets both real property and personal property.

The order confirming the plan shall constitute a finding the Court has jurisdiction to issue the injunction, that the injunction is consistent with the provisions of §§105, 524(e), 1123(a)(5) and 1129 and other applicable provisions of the Bankruptcy Code, and that issuing the injunction is in the best interests of the Debtor and the estate.

**10.03.9** United States Trustee Fees. Post-confirmation, the Debtor will be obligated to pay U.S. Trustee quarterly fees as they come due per applicable statute(s). This obligation will cease on entry of the final decree and case closing. All U.S. Trustee fees owed as of the Effective Date of the Plan will be paid on or before the Effective Date.

DATED this 31st day of May, 2018.

CREEKSIDE HOMES, INC.

By: ___/s/ Andrew Burton_____

Andrew Burton, President

///

///

///

DEBTOR'S MODIFIED PLAN OF REORGANIZATION DATED MAY 31, 2018 - **Page 23 of 24**

Exhibit "D" Page 24 of 25

THE FOX LAW CORPORATION


By:      /s/ Steven R. Fox
         Steven R. Fox, California SBN 138808

THE LAW OFFICES OF KEITH Y. BOYD


By:      /s/ Keith Y. Boyd
         Keith Y. Boyd, OSB#760701
         Of Attorneys for Debtor in Possession

DEBTOR'S MODIFIED PLAN OF REORGANIZATION DATED MAY 31, 2018 - **Page 24 of 24**

Exhibit "D" Page 25 of 25

# Exhibit "E"

Case 17-33893-tmb11    Doc 174    Filed 06/25/18

| | |
|---|---|
| Year 1- Month 1 | This projection begins in April of 2018, which is assumed to be 5 months prior to plan payments resulting from plan confirmation hearing in August.  Month 1 of Year 1 of the plan is projected to be October 2018. In the event that the plan is confirmed in a later or earlier month, the plan payments shall start 30 days after the court enters an order confirming the plan. |
| Sales Revenue | This projection is based upon the volume of Debtor's most recent 3 months.  Scheduled work in progress, plus a backlog of expected jobs are being managed to maintain a modest amount of work, without overbooking. Focusing on jobs with appropriate margins, and working just a few jobs consecutively in order to avoid mistakes and mismanagement.  Modest growth rates are intentional, and the debtor is selecting work to perform safely and profitably, turning down bids as necessary. |
| Cost of Goods Sold | The Debtor had previously scheduled work at cost plus 30%, which equates a gross margin of 23% of revenue. Actual margin in the most recent tax return was approximately half of the targeted percentage, due to a variety of circumstances, including upcharges from vendors and suppliers which were not passed thru to clients, mismanagement of cash flow, and excessive workload.  The Debtor has addressed each of these areas and has made the following changes to its business operations: (1) any increase in charges from suppliers is reflected via change order to Debtor's client prior to the commencement of work, (2) job costing has been implented to track cash management on each current contract and (3) Debtor has cancelled certain contracts and lost other contracts due to the Chapter 11 filing.  The four complete months since the filing have produced gross margin above 30%.  The projected provided uses 29-31% margin over the 5 years shown. |
| Advertising/Marketing | Based upon website hosting, sales funnel management, and guerilla marketing campaign. Increased by $800/month in year 4 for upgrades to internet marketing. |
| Adequate Protection Pymt | Consists of 3% of revenue above projected + $5K, required to pay to Funding Circle. |
| Auto and Truck Expenses | Costs include three auto leases, $492, $482, and $828, plus fuel costs esimated $1100/mo based on YTD fuel expense. |
| Bookkeeping | Cost of existing bookkeeper to maintain financial statements and prepare monthly operating reports required by US Trustee. |
| Insurance Exp | General liability of $1600/mo, auto $640/mo and worker comp estimate of 14% of payroll. |
| Office, Admin and Fees | Includes business licenses, taxes permits and fees, computer and internet expenses, dues and subscriptions, training and benefits, printing, postage, and office supplies - estimated based on costs incurred since the filing. |
| Payroll -Admin, PR tax and fees | Based upon current administrative roles, actual rates incurred during the most recent 2 months |
| Payroll - Officers | Officers payroll includes both Andrew and Sarah Burton, gross wages. |

| | |
|---|---|
| Rent Expense | Per current lease agreement, monthly rent is $1,120, and no rent increases are anticipated throughout the plan period. Good relationship with landlord who has stated no increases will occur. |
| Repair & Maintenance | Includes office maintainance, cleaning, uniforms, and repairs. |
| Shop Supplies & Small Tools | Construction tools needed, not tied to a particular job, based on historical expenses, YTD. |
| Telephone | Based on historical expenses YTD. |
| Utilities | Based on historical expenses YTD |
| US Trustee Fees | According to US Trustee Fee Schedule, for companies with quarterly disbusements below $999,999. |
| **** Atty-LOSRF | Estimated fees due to LOSRF upon plan confirmation are $100K. $45K to be paid in month 1, and $5K per month in months 2-12. |
| ****Atty-Boyd | Estimated fees due to attorney Keith Boyd upon plan confirmation are $30K. $15K per month to be paid in month 1 and $5K per month in months 2-4 of the plan. |
| Administrative - Le Grady | Payments are $1,000/month during months 1-6, and $1500 in month 7 for a total of $7,500. |
| Priority - DCBS | Claim of $3,239 including 10% interest, to be paid over the first 12 months of the plan at $284.76 per month for total principal and interest of $3417. |
| Class 1: Secured - Funding Circle | Secured claim of $77,706.57 paid at 5% interest beginning after month 3 at $1,550 per month during months 4-60. Resulting in P&I of $88,584.20 over 60 months. |
| Class 1A: Secured -Swift Financial | Secured claim of $20,000, to be paid over 55 months beginning in month 5 at $363.64/mo . |
| Class 2: General Unsecured<$500 | Deminimus unsecured claims, less than $500 each, are paid at 33% in month 1 of the plan. 4 claims totalling $1,105 @ 33% result in a payment of $365 paid in month 1. Other creditors may elect to reduce their claims to $500 or under and they will be paid 33% of their reduced claim amount. The Debtor believes that 3 or 4 creditors holding claims under $2,000 may make this election. If so, the Debtor has sufficient funds on hand to pay these additional de minimus claims. |
| Class 3: General Unsecured Claims | Unsecured claims of $1,029,798 paid at 15% of each dollar, less the Class 4 amount paid in excess of 10%, which is $28,879, for a net total of $125,590.52. Payments begin in month 10, @ $1452.95 per month during years 1 and 2. Payments increase to $2025.06/mo in years 3-5. In year 6, payments are $2,574.50/mo, for a total of $125,590.52. |
| Class 4: General Unsecured -3rdPC | Unsecured creditors holding guarantees by 3rd parties - includes the creditors Knight Capital, Swift Capital and Loan Me with claims of $288,792. Scheduled to pay 20% on the dollar over 51 months. Payments are $1,133/month for a total of $57,758. |
| New Value Money | New money of $65K, resulting from a refinance of a Burton owned property will be offered. |

Case 17-33893-tmb11    Doc 174    Filed 06/25/18

| | Pre Plan Payment Period | | | | | | Year 1 Month 1 | Year 1 Month 2 | Year 1 Month 3 | Year 1 Month 4 | Year 1 Month 5 | Year 1 Month 6 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Apr 2018 | May 2018 | Jun 2018 | Jul 2018 | Aug 2018 | Sep 2018 | | | | | | | |
| Sales Revenue | 135,000 | 135,000 | 135,000 | 135,000 | 135,000 | 135,000 | 135,000 | 135,000 | 135,000 | 135,000 | 135,000 | 135,000 | 1,620,000 |
| Cost of Goods Sold | 93,150 | 93,150 | 93,150 | 93,150 | 93,150 | 93,150 | 93,150 | 93,150 | 93,150 | 93,150 | 93,150 | 93,150 | 1,117,800 |
| Gross Profit | 41,850 | 41,850 | 41,850 | 41,850 | 41,850 | 41,850 | 41,850 | 41,850 | 41,850 | 41,850 | 41,850 | 41,850 | 502,200 |
| Operating Expenses | | | | | | | | | | | | | |
| Advertising/Marketing | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 9,000 |
| Adequate Protection Pymt | 463 | 1,050 | 900 | 839 | 300 | 300 | 0 | 0 | | | | | 3,852 |
| Auto and Truck Expenses | 2,460 | 2,460 | 2,460 | 2,460 | 2,460 | 2,460 | 2,460 | 2,460 | 2,460 | 2,460 | 2,460 | 2,460 | 29,520 |
| Bookkeeping | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| Insurance Exp | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 50,880 |
| Office, Admin and Fees | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 10,800 |
| Payroll -Admin, PR tax and fees | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 168,000 |
| Payroll - Officers | 8,200 | 8,200 | 8,200 | 8,200 | 8,200 | 8,200 | 8,200 | 8,200 | 8,200 | 8,200 | 8,200 | 8,200 | 98,400 |
| Rent Expense | 1,120 | 1,120 | 1,120 | 1,120 | 1,120 | 1,120 | 1,120 | 1,120 | 1,120 | 1,120 | 1,120 | 1,120 | 13,440 |
| Repair & Maintenance | 650 | 650 | 650 | 650 | 650 | 650 | 650 | 650 | 650 | 650 | 650 | 650 | 7,800 |
| Shop Supplies & Small Tools | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| Telephone | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 6,600 |
| Utilities | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2,400 |
| US Trustee Fees | 4,875 | | | 4,875 | 0 | 0 | 4,875 | 0 | 0 | 4,875 | 0 | 0 | 19,500 |
| Total Expenses | 39,908 | 35,620 | 35,470 | 40,284 | 34,870 | 34,870 | 39,445 | 34,570 | 34,570 | 39,445 | 34,570 | 34,570 | 438,192 |
| Operating Cash Flow | 1,942 | 6,230 | 6,380 | 1,566 | 6,980 | 6,980 | 2,405 | 7,280 | 7,280 | 2,405 | 7,280 | 7,280 | 64,008 |
| **Plan Payments** | | | | | | | | | | | | | |
| **** Atty-LOSRF | | | | | | | 45,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 70,000 |
| ****Atty-Boyd | | | | | | | 15,000 | 5,000 | 5,000 | 5,000 | 0 | 0 | 30,000 |
| Administrative - Le Grady | | | | | | | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 6,000 |
| Priority - DCBS | | | | | | | 285 | 285 | 285 | 285 | 285 | 285 | 1,709 |
| Class 1: Secured - Funding Circle | | | | | | | | | | 1,550 | 1,550 | 1,550 | 4,650 |
| Class 1A: Secured -Swift Financial | | | | | | | | | | | 364 | 364 | 727 |
| Class 2: General Unsecured<$500 | | | | | | | 365 | | | | | | 365 |
| Class 3: General Unsecured Claims | | | | | | | | | | | | | 0 |
| Class 4: General Unsecured -3rdPC | | | | | | | | | | | | | 0 |
| Total Payments | 0 | 0 | 0 | 0 | 0 | 0 | 61,649 | 11,285 | 11,285 | 12,835 | 8,198 | 8,198 | 113,450 |
| Operations after Plan Pymts | 1,942 | 6,230 | 6,380 | 1,566 | 6,980 | 6,980 | (59,244) | (4,005) | (4,005) | (10,430) | (918) | (918) | (49,443) |
| Beg Balance Cash on hand | 20,000 | | | | | | | | | | | | |
| New Value Money | | | | | 65,000 | | | | | | | | |
| Ending Cash Balance | 21,942 | 28,172 | 34,552 | 36,118 | 108,098 | 115,078 | 55,833 | 51,829 | 47,824 | 37,394 | 36,476 | 35,557 | 35,557 |

Exhibit "E" Page 4 of 8

| | | Year 1 Month 7 | Year 1 Month 8 | Year 1 Month 9 | Year 1 Month 10 | Year 1 Month 11 | Year 1 Month 12 | Subtotal | Year 2 Quarter 1 | Year 2 Quarter 2 | Year 2 Quarter 3 | Year 2 Quarter 4 | Year 2 Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales Revenue | | 137,363 | 137,363 | 137,363 | 137,363 | 137,363 | 137,363 | 824,175 | 412,088 | 412,088 | 412,088 | 412,088 | 1,648,350 |
| Cost of Goods Sold | 68% 70% | 93,407 | 93,407 | 93,407 | 93,407 | 93,407 | 93,407 | 560,439 | 288,461 | 288,461 | 288,461 | 288,461 | 1,153,845 |
| Gross Profit | | 43,956 | 43,956 | 43,956 | 43,956 | 43,956 | 43,956 | 263,736 | 123,626 | 123,626 | 123,626 | 123,626 | 494,505 |
| Operating Expenses | | | | | | | | | | | | | |
| Advertising/Marketing | | 750 | 750 | 750 | 750 | 750 | 750 | 4,500 | 2,261 | 2,261 | 2,261 | 2,261 | 9,045 |
| Adequate Protection Pymt | | | | | | | | 0 | | | | | 0 |
| Auto and Truck Expenses | | 2,460 | 2,460 | 2,460 | 2,460 | 2,460 | 2,460 | 14,760 | 7,417 | 7,417 | 7,417 | 7,417 | 29,668 |
| Bookkeeping | | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 6,000 | 3,000 | 3,000 | 3,000 | 3,000 | 12,000 |
| Insurance Exp | | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 4,240 | 25,440 | 12,784 | 12,784 | 12,784 | 12,784 | 51,134 |
| Office, Admin and Fees | | 900 | 900 | 900 | 900 | 900 | 900 | 5,400 | 2,714 | 2,714 | 2,714 | 2,714 | 10,854 |
| Payroll -Admin, PR tax and fees | | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 84,000 | 42,210 | 42,210 | 42,210 | 42,210 | 168,840 |
| Payroll - Officers | | 8,200 | 8,200 | 8,200 | 8,200 | 8,200 | 8,200 | 49,200 | 24,600 | 24,600 | 24,600 | 24,600 | 98,400 |
| Rent Expense | | 1,120 | 1,120 | 1,120 | 1,120 | 1,120 | 1,120 | 6,720 | 3,360 | 3,360 | 3,360 | 3,360 | 13,440 |
| Repair & Maintenance | | 650 | 650 | 650 | 650 | 650 | 650 | 3,900 | 1,960 | 1,960 | 1,960 | 1,960 | 7,839 |
| Shop Supplies & Small Tools | | 500 | 500 | 500 | 500 | 500 | 500 | 3,000 | 1,508 | 1,508 | 1,508 | 1,508 | 6,030 |
| Telephone | | 550 | 550 | 550 | 550 | 550 | 550 | 3,300 | 1,658 | 1,658 | 1,658 | 1,658 | 6,633 |
| Utilities | | 200 | 200 | 200 | 200 | 200 | 200 | 1,200 | 603 | 603 | 603 | 603 | 2,412 |
| US Trustee Fees | | 4,875 | 0 | 0 | 4,875 | 0 | 0 | 9,750 | 4,875 | 0 | 0 | 0 | 4,875 |
| Total Expenses | | 39,445 | 34,570 | 34,570 | 39,445 | 34,570 | 34,570 | 217,170 | 108,949 | 104,074 | 104,074 | 104,074 | 421,170 |
| Operating Cash Flow | | 4,511 | 9,386 | 9,386 | 4,511 | 9,386 | 9,386 | 46,566 | 14,678 | 19,553 | 19,553 | 19,553 | 73,335 |
| **Plan Payments** | | | | | | | | | | | | | |
| **** Atty-LOSRF | | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 30,000 | | 0 | | 0 | 0 |
| ****Atty-Boyd | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | 0 | | 0 | 0 |
| Administrative - Le Grady | | 1,500 | 0 | 0 | 0 | 0 | 0 | 1,500 | 0 | 0 | 0 | 0 | 0 |
| Priority - DCBS | | 285 | 285 | 285 | 285 | 285 | 285 | 1,709 | 0 | 0 | 0 | 0 | 0 |
| Class 1: Secured - Funding Circle | | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 9,300 | 4,650 | 4,650 | 4,650 | 4,650 | 18,600 |
| Class 1A: Secured -Swift Financial | | 364 | 364 | 364 | 364 | 364 | 364 | 2,182 | 1,091 | 1,091 | 1,091 | 1,091 | 4,364 |
| Class 2: General Unsecured<$500 | | | | | | | | 0 | | | | | 0 |
| Class 3: General Unsecured Claims | | | | | 1,453 | 1,453 | 1,453 | 4,359 | 4,359 | 4,359 | 4,359 | 4,359 | 17,435 |
| Class 4: General Unsecured -3rdPC | | | | | 1,133 | 1,133 | 1,133 | 3,398 | 3,398 | 3,398 | 3,398 | 3,398 | 13,590 |
| Total Payments | | 8,698 | 7,198 | 7,198 | 9,784 | 9,784 | 9,784 | 52,447 | 13,497 | 13,497 | 13,497 | 13,497 | 53,989 |
| Operations after Plan Pymts | | (4,187) | 2,188 | 2,188 | (5,273) | (398) | (398) | (5,881) | 1,180 | 6,055 | 6,055 | 6,055 | 19,346 |
| Beg Balance Cash on hand | | | | | | | | | | | | | |
| Ending Cash Balance | | 31,370 | 33,558 | 35,745 | 30,472 | 30,074 | 29,677 | 29,677 | 30,857 | 36,912 | 42,967 | 49,022 | 49,022 |

**1.75%** This is the increased rate of sales for years 1 &2
**0.50%** This is the estimated inflation rate for year 1 & 2

Exhibit "E" Page 5 of 8

|  | Year 3 Quarter 1 | Year 3 Quarter 2 | Year 3 Quarter 3 | Year 3 Quarter 4 | Year 3 Total |
|---|---|---|---|---|---|
| Sales Revenue | 418,269 | 418,269 | 418,269 | 418,269 | 1,673,075 |
| Cost of Goods Sold | 296,971 | 296,971 | 296,971 | 296,971 | 1,187,883 |
| | | | | | |
| Gross Profit | 121,298 | 121,298 | 121,298 | 121,298 | 485,192 |
| Operating Expenses | | | | | |
| Advertising/Marketing | 2,273 | 2,273 | 2,273 | 2,273 | 9,090 |
| Adequate Protection Pymt | | | | | 0 |
| Auto and Truck Expenses | 7,454 | 7,454 | 7,454 | 7,454 | 29,816 |
| Bookkeeping | 3,000 | 3,000 | 3,000 | 3,000 | 12,000 |
| Insurance Exp | 12,848 | 12,848 | 12,848 | 12,848 | 51,390 |
| Office, Admin and Fees | 2,727 | 2,727 | 2,727 | 2,727 | 10,908 |
| Payroll -Admin, PR tax and fees | 42,421 | 42,421 | 42,421 | 42,421 | 169,684 |
| Payroll - Officers | 24,600 | 24,600 | 24,600 | 24,600 | 98,400 |
| Rent Expense | 3,360 | 3,360 | 3,360 | 3,360 | 13,440 |
| Repair & Maintenance | 1,970 | 1,970 | 1,970 | 1,970 | 7,878 |
| Shop Supplies & Small Tools | 1,515 | 1,515 | 1,515 | 1,515 | 6,060 |
| Telephone | 1,667 | 1,667 | 1,667 | 1,667 | 6,666 |
| Utilities | 606 | 606 | 606 | 606 | 2,424 |
| US Trustee Fees | 0 | 0 | 0 | 0 | 0 |
| Total Expenses | 104,439 | 104,439 | 104,439 | 104,439 | 417,757 |
| | | | | | |
| Operating Cash Flow | 16,859 | 16,859 | 16,859 | 16,859 | 67,435 |
| **Plan Payments** | | | | | |
| **** Atty-LOSRF | | 0 | 0 | 0 | 0 |
| ****Atty-Boyd | | 0 | 0 | 0 | 0 |
| Administrative - Le Grady | 0 | 0 | 0 | 0 | 0 |
| Priority - DCBS | 0 | 0 | 0 | 0 | 0 |
| Class 1: Secured - Funding Circle | 4,650 | 4,650 | 4,650 | 4,650 | 18,600 |
| Class 1A: Secured -Swift Financial | 1,091 | 1,091 | 1,091 | 1,091 | 4,364 |
| Class 2: General Unsecured<$500 | | | | | 0 |
| Class 3: General Unsecured Claims | 6,075 | 6,075 | 6,075 | 6,075 | 24,301 |
| Class 4: General Unsecured -3rdPC | 3,398 | 3,398 | 3,398 | 3,398 | 13,590 |
| Total Payments | 15,214 | 15,214 | 15,214 | 15,214 | 60,855 |
| Operations after Plan Pymts | 1,645 | 1,645 | 1,645 | 1,645 | 6,580 |
| Beg Balance Cash on hand | | | | | |
| Ending Cash Balance | 50,667 | 52,312 | 53,957 | 55,602 | 55,602 |

Case 17-33893-tmb11    Doc 174    Filed 06/25/18

Exhibit "E" Page 6 of 8

**1.50%** This is the increased rate of sales for year 3
**0.50%** This is the estimated inflation rate for year 3

Case 17-33893-tmb11    Doc 174    Filed 06/25/18

| | | Year 4 Quarter 1 | Year 4 Quarter 2 | Year 4 Quarter 3 | Year 4 Quarter 4 | Year 4 Total | Year 5 Quarter 1 | Year 5 Quarter 2 | Year 5 Quarter 3 | Year 5 Quarter 4 | Year 5 Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales Revenue | | 424,543 | 424,543 | 424,543 | 424,543 | 1,698,171 | 430,911 | 430,911 | 430,911 | 430,911 | 1,723,644 |
| Cost of Goods Sold | 70% | 297,180 | 297,180 | 297,180 | 297,180 | 1,188,720 | 301,638 | 301,638 | 301,638 | 301,638 | 1,206,551 |
| Gross Profit | | 127,363 | 127,363 | 127,363 | 127,363 | 509,451 | 129,273 | 129,273 | 129,273 | 129,273 | 517,093 |
| **Operating Expenses** | | | | | | | | | | | |
| Advertising/Marketing | | 4,684 | 4,684 | 4,684 | 4,684 | 18,736 | 4,707 | 4,707 | 4,707 | 4,707 | 18,829 |
| Adequate Protection Pymt | | | | | | 0 | | | | | 0 |
| Auto and Truck Expenses | | 7,491 | 7,491 | 7,491 | 7,491 | 29,965 | 7,529 | 7,529 | 7,529 | 7,529 | 30,115 |
| Bookkeeping | | 3,000 | 3,000 | 3,000 | 3,000 | 12,000 | 3,000 | 3,000 | 3,000 | 3,000 | 12,000 |
| Insurance Exp | | 12,912 | 12,912 | 12,912 | 12,912 | 51,647 | 12,976 | 12,976 | 12,976 | 12,976 | 51,905 |
| Office, Admin and Fees | | 2,741 | 2,741 | 2,741 | 2,741 | 10,854 | 2,754 | 2,741 | 2,741 | 2,741 | 10,854 |
| Payroll -Admin, PR tax and fees | | 42,633 | 42,633 | 42,633 | 42,633 | 170,533 | 42,846 | 42,846 | 42,846 | 42,846 | 171,385 |
| Payroll - Officers | | 24,600 | 24,600 | 24,600 | 24,600 | 98,400 | 24,600 | 24,600 | 24,600 | 24,600 | 98,400 |
| Rent Expense | | 3,360 | 3,360 | 3,360 | 3,360 | 13,440 | 3,360 | 3,360 | 3,360 | 3,360 | 13,440 |
| Repair & Maintenance | | 1,979 | 1,979 | 1,979 | 1,979 | 7,918 | 1,989 | 1,989 | 1,989 | 1,989 | 7,957 |
| Shop Supplies & Small Tools | | 1,523 | 1,523 | 1,523 | 1,523 | 6,090 | 1,530 | 1,530 | 1,530 | 1,530 | 6,121 |
| Telephone | | 1,675 | 1,675 | 1,675 | 1,675 | 6,699 | 1,683 | 1,683 | 1,683 | 1,683 | 6,733 |
| Utilities | | 609 | 609 | 609 | 609 | 2,436 | 612 | 612 | 612 | 612 | 2,448 |
| US Trustee Fees | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Expenses | | 107,207 | 107,207 | 107,207 | 107,207 | 428,718 | 107,588 | 107,574 | 107,574 | 107,574 | 430,188 |
| Operating Cash Flow | | 20,156 | 20,156 | 20,156 | 20,156 | 80,733 | 21,685 | 21,699 | 21,699 | 21,699 | 86,905 |
| **Plan Payments** | | | | | | | | | | | |
| **** Atty-LOSRF | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| ****Atty-Boyd | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Administrative - Le Grady | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Priority - DCBS | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Class 1: Secured - Funding Circle | | 4,650 | 4,650 | 4,650 | 4,650 | 18,600 | 4,650 | 4,650 | 4,650 | 4,884 | 18,834 |
| Class 1A: Secured -Swift Financial | | 1,091 | 1,091 | 1,091 | 1,091 | 4,364 | 1,091 | 1,091 | 1,091 | 727 | 4,000 |
| Class 2: General Unsecured<$500 | | | | | | 0 | | | | | 0 |
| Class 3: General Unsecured Claims | | 6,075 | 6,075 | 6,075 | 6,075 | 24,301 | 6,075 | 6,075 | 6,075 | 6,075 | 24,301 |
| Class 4: General Unsecured -3rdPC | | 3,398 | 3,398 | 3,398 | 3,398 | 13,590 | 3,398 | 3,398 | 3,398 | 3,398 | 13,590 |
| Total Payments | | 15,214 | 15,214 | 15,214 | 15,214 | 60,855 | 15,214 | 15,214 | 15,214 | 15,084 | 60,725 |
| Operations after Plan Pymts | | 4,942 | 4,942 | 4,942 | 4,942 | 19,879 | 6,472 | 6,485 | 6,485 | 6,615 | 26,180 |
| Beg Balance Cash on hand | | | | | | | | | | | |
| Ending Cash Balance | | 60,545 | 65,487 | 70,430 | 75,372 | 75,481 | 81,953 | 88,438 | 94,923 | 101,538 | 101,661 |

**1.50%** This is the increased rate of sales for years 4 & 5
**0.50%** This is the estimated inflation rate for years 4 and 5

Exhibit "E" Page 7 of 8

| | Year 6 Quarter 1 | Year 6 Quarter 2 | Year 6 Quarter 3 | Year 6 Quarter 4 | Year 6 Total | |
|---|---|---|---|---|---|---|
| Sales Revenue | 437,375 | 437,375 | 437,375 | 437,375 | 1,749,499 | |
| Cost of Goods Sold | 314,910 | 314,910 | 314,910 | 314,910 | 1,259,639 | |
| Gross Profit | 122,465 | 122,465 | 122,465 | 122,465 | 489,860 | |
| Operating Expenses | | | | | | |
| Advertising/Marketing | 4,731 | 4,731 | 4,731 | 4,731 | 18,924 | |
| Adequate Protection Pymt | 0 | | | | 0 | |
| Auto and Truck Expenses | 7,566 | 7,566 | 7,566 | 7,566 | 30,265 | |
| Bookkeeping | 3,000 | 3,000 | 3,000 | 3,000 | 12,000 | |
| Insurance Exp | 13,041 | 13,041 | 13,041 | 13,041 | 52,165 | |
| Office, Admin and Fees | 2,754 | 2,754 | 2,754 | 2,754 | 11,018 | |
| Payroll -Admin, PR tax and fees | 43,061 | 43,061 | 43,061 | 43,061 | 172,242 | |
| Payroll - Officers | 24,600 | 24,600 | 24,600 | 24,600 | 98,400 | |
| Rent Expense | 3,360 | 3,360 | 3,360 | 3,360 | 13,440 | |
| Repair & Maintenance | 1,999 | 1,999 | 1,999 | 1,999 | 7,997 | |
| Shop Supplies & Small Tools | 1,538 | 1,538 | 1,538 | 1,538 | 6,152 | |
| Telephone | 1,692 | 1,692 | 1,692 | 1,692 | 6,767 | |
| Utilities | 615 | 615 | 615 | 615 | 2,461 | |
| US Trustee Fees | 0 | 0 | 0 | 0 | 0 | |
| Total Expenses | 107,957 | 107,957 | 107,957 | 107,957 | 431,829 | |
| Operating Cash Flow | 14,508 | 14,508 | 14,508 | 14,508 | 58,030 | |
| | | | | | | 6 yr Totals |
| **Plan Payments** | | | | | | |
| **** Atty-LOSRF | 0 | 0 | 0 | 0 | 0 | 100,000 |
| ****Atty-Boyd | 0 | 0 | 0 | 0 | 0 | 30,000 |
| Administrative - Le Grady | 0 | 0 | 0 | 0 | 0 | 7,500 |
| Priority - DCBS | 0 | 0 | 0 | 0 | 0 | 3,417 |
| Class 1: Secured - Funding Circle | 0 | 0 | 0 | 0 | 0 | 88,584 |
| Class 1A: Secured -Swift Financial | 0 | 0 | 0 | 0 | 0 | 20,000 |
| Class 2: General Unsecured<$500 | 0 | 0 | 0 | 0 | 0 | 365 |
| Class 3: General Unsecured Claims | 7,723 | 7,723 | 7,723 | 7,723 | 30,894 | 125,591 |
| Class 4: General Unsecured -3rdPC | 0 | 0 | 0 | 0 | 0 | 57,758 |
| Total Payments | 7,723 | 7,723 | 7,723 | 7,723 | 30,894 | 433,215 |
| Operations after Plan Pymts | 6,784 | 6,784 | 6,784 | 6,784 | 27,136 | |
| Beg Balance Cash on hand | | | | | | |
| Ending Cash Balance | 108,322 | 115,107 | 121,891 | 128,675 | 128,797 | |